[Civil No. 4635.   Filed February 24, 1945.]

[156 Pac. (2d) 244.]

THE VALLEY NATIONAL BANK OF PHOENIX, a National Banking Corporation, Executor of the Estate of Hester A. Battles, Deceased, Appellant, v. FRANCIS J. BATTLES, Administrator of the Estate of Asa Battles, Deceased, Appellee.

Mr. D. P. Skousen and Mr. M. L. Ollerton, for Appellant.

Mr. Harold J. Janson, for Appellee.

Messrs. Lewkowitz & Wein, and Mr. Jacob C. Morgan, *Amici Curiae.*

STANFORD, C. J.—In this appeal we will call the appellee the plaintiff and the appellant the defendant as applied to them in the superior court.

The case was tried before the court without a jury.

Francis J. Battles, as the administrator of the estate of Asa Battles, deceased, his father, brought this action to have the SW¼ of sec. 24 and the NW¼ of sec. 25, T. 1 N., R. 4 W., containing 320 acres, situate in Maricopa County, Arizona, declared to be community property, and asked for an accounting by the defendant herein, the executor of the estate of Hester A. Battles, deceased. Hester A. Battles was the mother of plaintiff. The action also asked for damages in the sum of $5,000 for withholding from the rightful heirs and using the estate of Asa Battles from the date of his death to the date of the filing of the complaint.

Hester A. Battles in 1928 received a patent from the United States to the land in question under the desert land law. Asa Battles died intestate November 25, 1935, and his wife, Hester A. Battles, died testate February 24, 1942. It is undisputed that when the

final proof was submitted for the purpose of getting a patent Asa Battles and Hester A. Battles were jointly enjoying and using the land in question and that Asa Battles paid the expenses for the final proof and for the improvements on the land.

Defendant's answer stated that it did not know if the property was community or not and asked the plaintiff to make proof of same. Defendant also set up as defenses the statutes of limitation, Arizona Code Annotated 1939, as follows:

"29–101. *Three-year limitation—Terms defined.*— Every action instituted to recover real property as against any person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three (3) years next after the cause of action has accrued and not afterward. By the term 'title' is meant a regular chain of transfer from or under the sovereignty of the soil, and by 'color of title' is meant a consecutive chain of such transfer down to such person in possession without being regular, as if one (1) or more of the memorials or muniments be not recorded or not duly recorded or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty, or when the party in possession shall hold the same by a land warrant or land script with a chain of transfer down to him in possession."

"29–102. *Five-year limitation.*—Every action instituted to recover real property as against any person having peaceable and adverse possession thereof, cultivating, using, or enjoying the same, and paying taxes thereon, and claiming under a deed or deeds duly recorded, shall be instituted within five (5) years next after the cause of action has accrued, and not afterwards. . . . "

Defendant contends that the right of an accounting for the years 1935, 1936, 1937, 1938 and 1939 was barred by Sections 29–203 and 29–206, Arizona Code Annotated 1939.

Defendant further contends that Asa Battles and his heirs were estopped because he, Asa Battles, was a witness upon the final proof of said desert land entry and testified that he was not interested in the matter.

The judgment of the trial court was to the effect that the land involved was during the lifetime of Asa Battles and at the time of his death, the community property of Asa Battles and his wife, Hester A. Battles, and that an undivided one-half interest is vested in the heirs of Asa Battles, deceased, free from all right, title, claim or demand of any person claiming under said Hester A. Battles, and the plaintiff do have and recover from the defendant the sum of $9,431.50 to be paid out of the funds of said estate in due course of administration, and other things.

The first of the issues presented by the pleadings is whether the land acquired under the desert entry act in the name of the wife is community property or her separate property.

Our statute, Section 63–301, Arizona Code Annotated 1939, reads:

"*Community property—Power of disposition.*—All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children, while she has lived or may live, separate and apart from her husband, shall be the community property of the husband and wife. . . . "

██ The desert entry title here involved was initiated and perfected during the time of the coverture, and consequently falls clearly within the statutory definition of community property. This land was acquired from the United States, and it is said in *Buchser* v. *Buchser,* 231 U. S. 157, 34 Sup. Ct. 46, 58 L. Ed. 166:

"'There is no doubt, of course, that until the title is completed the laws of the United States control. (Citing cases.) But when the title has passed, then the land 'like all other property in the state is subject to

the state legislation.' (Citing cases.) If the United States could impress a peculiar character upon land within a state after parting with all title to it, at least the clearest expression would be necessary before such a result could be reached. . . . ''

In *Bastjan* v. *Bastjan,* 215 Cal. 662, 12 Pac. (2d) 627, the court held a desert land claim entered in the name of the husband, but paid for out of community funds, was community property.

In *Buchser* v. *Morse,* 9 Cir., 202 Fed. 854, the head-note reads as follows:

"When a patent has been issued by the United States to a homestead entryman, the land becomes subject to the laws of descent and distribution of the state, and under the law of Washington as settled by decision a government homestead acquired by a husband is community property."

In *Re Little Joe's Estate,* 165 Wash. 628, 5 Pac. (2d) 995, 997, the following language was used by the court:

"Lands acquired under the United States homestead laws are acquired by purchase under our law, and, when title is obtained, or earned, during coverture, are communty property. (Citing case.)

"The same is true as to lands acquired under United States pre-emption laws. (Citing case.)"

The government, in issuing its title to said land, received a valuable consideration from the purchasers. It wasn't a gift, a devise nor was it inherited and it was not paid for with the earnings of the wife and minor children while living separate and apart from the husband.

The property was certainly community property when acquired from the national government. McKay on Community Property, 2nd Ed. 334, sec. 505, says:

" . . . ; the right prior to final proof is not transferable and is in all things subject to federal law, and descends strictly according to the federal statute; after

final proof, the property becomes subject to the rules of inheritance, and the marital rights, prescribed by the state law; the inchoate right, prior to final proof, wants some of the essentials of common property . . . . The conclusion of the matter would seem to be that the federal government, in order to carry out its policy, has, prior to final proof, robbed the entryman's right of some of the usual incidents of common property, but after final proof, has left the property fully subject to the state laws regulating transfers, inheritances and marital rights.''

█ █ Another contention raised by defendant is that since Asa Battles, as a witness to the final proof on the desert entry, stated he had no ''interest direct or indirect'' in the entry or land or water used to irrigate the land, his administrator is now estopped to claim any such interest. McKay on Community Property, *supra,* 331, sec. 501, states the rule as follows:

''In nearly all the federal laws providing for the sale and disposition of the lands of the United States is found a provision which in slightly varying terms requires the purchaser to make oath that he is purchasing for his own use or his exclusive use; such provisions are found in the homestead and pre-emption acts but they have not prevented a community acquisition, if the property is acquired during marriage by a married person. Manifestly such provisions were inserted in the law to carry out the well understood policy of preventing the acquisition of government lands by syndicates. Entryman must seek to acquire the land for his own 'exclusive use,' that is, not for the use of those who are seeking through him to thwart the purpose of the government; evidently it was not intended by the use of these words to exclude the wife from the marital rights secured by the local law, and the courts have so held with few exceptions.''

See also sec. 504, McKay on Com. Property, *supra.*

█ Hester Battles and her heirs were acquainted with all the facts; they were not deceived nor misled in any way by reason of any representations made by

Asa Battles. The text in 31 C. J. S., Estoppel, p. 254, § 67, first headnote reads as follows:

"To create an equitable estoppel, a false representation or concealment of material facts must be made, by a person with knowledge, actual or constructive, of the real facts, to a person without such knowledge, with the intention that it shall be acted on by the latter person, and he must so rely and act thereon that he will suffer injury or prejudice by the repudiation or contradiction thereof or the assertion of a claim inconsistent therewith."

There is an entire absence of the elements of estoppel under the facts of this case.

The property involved being community, we next take up the question of statute of limitations.

Plaintiff pleaded the ten years statute in addition to the three and five year periods, but since the death of Asa Battles was in 1935 and Hester A. Battles died in 1942, the ten year statute would not apply.

We find from the evidence the following taken from the testimony of Francis J. Battles, one of the sons of the deceased mother and father. Francis Battles was often termed "Frank."

"Mr. Janson: Now, then, Frank, after your father's death did you ever discuss the matter of probate with your mother?    A. Yes; I told her—

"Q. When?    A. Why, it was along in December; I told her she should probate because I didn't know—

"Mr. Skousen: December of what year?    A. Of 1935. I didn't know how long she had to settle the estate.

"Mr. Ollerton: She told you that?    A. I told her that, and she says, 'No, it is community property and I have only two boys, you and Ira, and nobody else will come in but you two, so why probate it?    Let it go.'    So I said, 'All right.' "

And again, we find the following evidence by the same witness:

"A. She was sick in December of 1937 and January, 1938, and I got a telegram to come home. I was back East. I came home; she was at the point of death. She got straightened up so I went away again.

"Q. Is that the reason you didn't force the issue of probate? A. Yes."

The other son, Ira C. Battles, testified as follows:

"Q. Calling your attention to the death of your father in 1935, did you ever consult with your mother concerning the probate of the estate? A. Yes, sir, I did. The first time I approached her was on the second day of January, 1936, because all of my early earnings before I was 33 years old was put into their estate and I was hard up and needed money, and I asked her to probate it then and she says, 'No, there is no need to probate this because I am not going to live long, there are just you two boys and you fellows will get both your father's estate and mine, so why probate it.'

"Q. Did you consult her later about it? A. Yes, I consulted her then after I seen her mind was going down, at the beginning of 1938, I went to see her regarding probation, about the 16th day of March, 1938 . . ."

Every act of the mother indicates that she was not holding the property by adverse possession but because of her community interest.

From the case of *Johns* v. *Scobie*, 12 Cal. (2d) 618, 86 Pac. (2d) 820, 121 A. L. R. 1404; Id., Cal. App., 79 Pac. (2d) 191, 196, we quote the following:

" . . . In that connection, we cannot see that it makes an iota of difference whether such attempted adverse possession is brazenly tortious or founded on a writing purporting to give color of title. An heir cannot gain any title by adverse possession whether in bad faith or in good faith against the estate, and in the absence of a conveyance investing him with actual title it does not matter whether his possession is under some instrument relied on as giving color of title or not. . . ."

From the case of *In re Harris' Estate*, 9 Cal. (2d) 649, 72 Pac. (2d) 873, 879, we quote:

" . . . Appellant relies strongly upon the case of *Stafford* v. *Martinoni*, 192 Cal. 724, 221 Pac. 919, 924, as placing the burden of making an accounting of such funds upon the administrator of the estate of the decedent. There is language in that case to the effect that, since the widow held property during her lifetime in trust 'for the benefit of his estate and heirs,' her administrator should be held to such an accounting as would disclose what portion of such property was derived from the community property of herself and husband. It is apparent that in that case the reason the widow was held to hold certain property in trust for the benefit of her husband's heirs, was that at the time of the death of her husband his relatives were entitled to share to the extent of one-half in any community property owned by the spouses not disposed of by will. Upon the death of her husband, she failed to include in her inventory property which upon her death was claimed by her husband's relatives to have been community property of the spouses. As to this property which should have been distributed to her husband's relatives upon the death of her husband, it is obvious that she held it as trustee for them during her lifetime, and the burden of accounting therefor should properly be upon her representative. . . ."

From *Stafford* v. *Martinoni*, 192 Cal. 724, 221 Pac. 919, 925, is the following:

"As to the remainder of the real estate held by Caroline R. Brown at the time of her death, other than that conveyed to her during the lifetime of her husband, and also as to the personal property, consisting in the main of notes and mortgages taken by her for loans made during the four years succeeding the date of her husband's death which she survived him, we think her administrator should be held to such an accounting as would disclose what portion of such real and personal estate, if any, was derived from the community property of Charles R. and Caroline R. Brown as it existed at the date of the death of Charles R. Brown. We think the undisputed evidence in the case

sufficient to cause the burden of making such showing upon the administrator of Caroline R. Brown, deceased, since, at the death of her husband, she became the trustee of his portion of the community property for the benefit of his estate and heirs."

Further on the subject of the statute of limitations we quote with approval the following from 17 R. C. L. sec. 326, p. 958:

"*Trustees.*—Since the subject of the operation of statutes of limitation in reference to trusts has elsewhere been considered at length, it is unnecessary to add more at this point than to say that generally speaking a trustee under an express trust cannot take advantage of the statute of limitations as against the beneficiaries, because in law his possession is the possession of the *cestui que* trust. But this reasoning does not apply to implied trusts and therefore a trustee under an implied trust may normally plead the statute of limitations. . . . "

Hester A. Battles was entitled to probate the estate of her husband. She had the first right as the wife of deceased. She contributed to the delay in probating his estate and she cannot take advantage of her wrong doing by claiming that the action was barred by the statute of limitations.

We hold, therefore, that Hester A. Battles occupied a position of trust in respect to the property involved and that the possession was the possession of the sons.

Accordingly the judgment is affirmed.

LaPRADE and MORGAN, J. J., concur.