352 P.2d 982

**BUILDERS SUPPLY CORPORATION, an Arizona corporation, Appellant,**

v.

**Elwood N. MARSHALL, Appellee.**

No. 6413.

Supreme Court of Arizona.

June 8, 1960.

Fennemore, Craig, Allen & McClennen, by B. J. Rumsey, Phoenix, for appellant.

W. H. Chester, Phoenix, for appellee.

PER CURIAM.

This is an appeal by Builders Supply Corporation, defendant-appellant, from a money judgment entered against it in favor of Elwood N. Marshall, plaintiff-appellee. The parties will herein be referred to as

they appeared in the lower court, i. e., plaintiff and defendant.

Plaintiff instituted this action to recover a balance of $2,892.99 claimed due for hauling services rendered under a written contract dated October 5, 1948. The case was tried to the court sitting without a jury. Judgment was entered as prayed for with interest and costs. One of the points raised on defendant's motion for new trial was that the damages awarded were excessive; the court recognized the justness of this claim, and in its order disposing of said motion it directed that a remittitur in the sum of $532.80 be filed by plaintiff or a new trial would be granted, and stated that if a remittitur was filed the motion would stand denied. A remittitur was promptly filed. This appeal followed.

This case is in most respects similar to Builders Supply Corporation v. Shipley, reported in 86 Ariz. 153, 341 P.2d 940, and reference is made thereto as showing the "modus operandi" of the contracting parties. Moreover, it will not be necessary to repeat the pertinent pronouncements of legal principles contained therein. However certain defenses, not pleaded—hence undecided—in the Shipley case, were expressly set forth in the instant case.

Plaintiff Marshall was a licensed contract carrier and had a copy of his contract with defendant, dated October 5, 1948, approved and on file with the Corporation Commission. Thereafter, in November 1948, defendant Builders Supply adopted and began to use a different basis of payment to plaintiff (and other truckers) who were hauling its products. It should be noted that the Corporation Commission was not advised of any modification of the Marshall contract or change in the rate of payment, nor did they approve of same. The subsequent amounts paid to plaintiff were less than the sums called for in the contract. This discrepancy gave rise to the instant suit. This practice continued until the parties terminated their relationship in October 1950.

It is apparent from the record that the trial court considered there were two valid grounds upon which to base a judgment for plaintiff, viz.:

1. That as a matter of fact the parties had never agreed upon a modification of said contract.

2. That the parties did not have the power or right to modify the contract of October 5, 1948, without first filing with the Corporation Commission a copy of said subsequent contract, which concededly was not done. It is to be noted that the Commission's General Order No. MV-4 specifically makes such a requirement.

While the trial court perhaps leaned most heavily upon the second ground, we do not believe it is necessary for us to determine the correctness of this legal conclusion where the appeal can be determined upon the other basis. Certainly if in truth and

in fact there was no modification agreed upon, there could be no amended contract to file with the Commission, and the original contract would be controlling.

 This leads us to the query: was there a modification of the contract?

The trial court, inter alia, found:

"6. The plaintiff never, orally or in writing, consented to a modification of the contract of October 5, 1948."

By an appropriate assignment of error the defendant asserts such finding is not supported by any competent evidence. To the contrary it maintains the evidence clearly establishes that the original contract "was modified, or terminated or replaced by a new agreement between the parties." After a careful perusal of the evidence we are unable to agree with these contentions. The plaintiff unequivocally testified that he never at any time agreed to a modification of the agreement, and this assertion is supported by other evidence. The most that can be said is that there is a conflict in the evidence, and our duty is to construe the evidence in a light most favorable to a sustaining of the judgment. We find no merit to this assignment.

## Waiver

 By its answer defendant alleged that the acts and conduct of plaintiff constituted a waiver of his present claim for additional money, in that he accepted the lesser payments made from time to time without asserting that more money was due him; furthermore, that no demand was made for any additional amounts until after he ceased to be employed by defendant. An appropriate assignment of error presses this defense. We have repeatedly stated that "waiver is a voluntary relinquishment of a known right." The difficulty in invoking this defense is that the evidence, taken in a light most favorable to plaintiff, does not sustain such a plea. The record is replete with testimony of defendant that he constantly asserted more money was due him and that he made demand for payment of same. By its judgment the trial court resolved this issue against defendant and we perceive no error therein.

## Account stated

 What has just been said with reference to the plea of waiver applies with equal force to the assignment that the "evidence clearly establishes that plaintiff was paid on the basis of account stated." The evidence does not support such a contention, for there was no "meeting of the minds" of the parties as to any settlement. The trial court did not err in rejecting this defense.

## Estoppel

 As a further defense to the complaint defendant alleged that plaintiff was

estopped by his conduct to challenge the correctness of the amounts paid. The elements of an estoppel in pais are well settled; they are, essentially: conduct by which one intentionally or through culpable negligence induces another to believe and have confidence in certain material facts, which inducement results in acts in reliance thereon, justifiably taken, which cause injury to the party thus relying. Kerby v. State, 62 Ariz. 294, 157 P.2d 698; Valley National Bank of Phoenix v. Battles, 62 Ariz. 204, 156 P.2d 244. Defendant argues that plaintiff, by his acquiescence to the modified rate schedules, induced a reliance which was detrimental to defendant. The theory advanced is that, had defendant known that plaintiff intended to insist upon payment according to the original contractual terms, it would have terminated the unprofitable relationship and used its own trucking facilities for the hauling. If defendant had proved the truth of this assertion, it might have prevailed. However, it does not appear on the facts of this case that defendant has made out a case for estoppel. The record does not indicate—and the trial court did not find—that plaintiff's conduct was such as to suggest to defendant any acquiescence. No such intention appears, on the part of plaintiff. To the contrary, agents of defendant testified that plaintiff made it very clear that he felt he was being underpaid, and that defendant was violating the contract. In a recent case involving estoppel, Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354, we held that where one appears to sanction an improper but continuing course of conduct, estoppel may prevent the later raising of such impropriety. However, it is significant that in the Holmes case we stressed the fact that the defendant therein had never been heard to complain of the plaintiff's defective performance. Here, just the opposite is true. There is no evidence to support the contention that defendant was misled intentionally or through plaintiff's culpable negligence. Any impression on the part of defendant that no demand would be made by plaintiff must be attributed to wishful thinking. Again, we find no error in the trial court's ruling in this respect.

## Limitations

Defendant advances two contentions based upon the statutes of limitations. *First,* relying upon A.R.S. § 12–541(3), it is argued that this action is one brought "upon a liability created by statute * *," and that thus the one-year limitation provided for by that section operates as a bar to plaintiff's recovery. Defendant's position on this point is that, since plaintiff relies to some extent upon regulations of the Corporation Commission, and since such regulations have the force of law, any liability imposed would be "a liability

created by statute." There is no merit whatever to this contention. The rights and obligations of these parties arise from their contract, not from any legislative pronouncement. The only effect which the Corporation Commission's rules could conceivably have upon the relations between these contracting parties—relevant to the instant suit—would be to impose certain conditions precedent to the modification of their agreement. By so doing, the regulations would not, in any sense of the word, *create* a liability, although they might *preserve* a liability which might otherwise be extinguished. See, Maricopa County Municipal Water Conservation District No. 1 v. Warford, 69 Ariz. 1, 206 P.2d 1168; Griffen v. Cole, 60 Ariz. 83, 131 P.2d 989.

*Second*, turning to A.R.S. § 12–548, defendant asserts that the six-year limitation to recover a debt founded upon a contract in writing is a bar to this action. Proper consideration of this point requires an examination of the chronology of the events leading up to this adjudication. The order of the relevant occurrences is as follows: on October 5, 1948, the contract was entered into; on November 9, 1948, plaintiff received his first alleged underpayment; the underpayments continued from then until the termination of the relationship in October 1950; the complaint in this action was filed on May 16, 1955.

We hold the six-year limitation set out in A.R.S. § 12–548 is applicable on the facts alleged in this case. This was recognized by this court in the Shipley decision, supra. It is equally clear that more than six years elapsed between the first alleged breach of contract and the filing of the complaint. However, this does not necessarily require that the plaintiff's recovery be entirely denied. The plaintiff alleged not just one breach of contract, but successive and continuing underpayments, each one of which amounted to a separate breach. A "cause of action accrues"—in the terms of the statute of limitations—each time defendant fails to perform as required under the contract. Morris v. Russell, 120 Utah 545, 236 P.2d 451, 26 A.L.R.2d 947; Kramer v. Board of Education, 194 Misc. 128, 84 N.Y.S.2d 874, affirmed 275 App.Div. 915, 90 N.Y.S.2d 684; Johnstone v. E. & J. Mfg. Co., 45 Cal.App.2d 586, 114 P.2d 658; Weadon v. First National Bank & Trust Co., 129 Conn. 541, 29 A.2d 779; Hitchcock v. Union & New Haven Trust Co., 134 Conn. 246, 56 A.2d 655. Perhaps plaintiff might have considered the underpayment of November 1948 as a repudiation or anticipatory breach and brought suit at that time for all his prospective losses, but his failure so to do did not deprive him of his legal right to recover each deficiency as it appeared. Thus, although the six-year limitations barred the recovery of any debt arising prior to May 16, 1949 (six years before the complaint was filed), obligations

**96**

accruing after that date still are enforceable.

 In justification of the amount awarded—which admittedly includes sums due more than six years before the complaint was filed—plaintiff contends that his tabulation of the underpayments, presented to defendant upon the termination of the employment in October 1950, represented an "account stated", and that therefore the limitations period did not begin to run until that time. In the first place the evidence does not indicate this to be the type of situation covered by the statutory exception (A.R.S. § 12–543(2) relating to stated or open accounts. Furthermore the assertion is not borne out by the law, since the tabulation did not represent any *agreement of the parties* as to the amount of the indebtedness. The element of agreement is an absolute requisite to the legal concept of "account stated." Ralston v. Morgan, 50 Ariz. 504, 73 P.2d 94; Murphy v. Smith, 26 Ariz. 394, 226 P. 206; Chittenden & Eastman Co. v. Leader Furniture Co., 23 Ariz. 93, 201 P. 843. At any rate, plaintiff can gain nothing from his position on this point, since the limitations period on an account stated is only three years (see A.R. S. § 12–543, supra), and over four years intervened between that time and the institution of this action.

 It manifestly appears from the record that the trial court failed to apply the proper cut-off date (May 16, 1949) in assessing the damages. Since plaintiff was not entitled to any recovery allocable to shipments hauled prior thereto, the trial court erred in this respect. However, it is not necessary for us to remand the cause for new trial in order that this error be corrected. There is no dispute as to the trips made or the tonnage hauled by plaintiff, and the exhibits very definitely disclose that both the original judgment and the remittitur entered below were overstated, due to the trial court's failure to exclude items attributable to the period barred by limitation. It is ordered, therefore, that the judgment be further reduced by $512.99. Under the authority granted by A.R.S. § 12–2103 the matter is remanded to the trial court with directions to enter judgment for plaintiff in the net sum of $1,847.20 with interest.

As thus modified the judgment is affirmed, defendant to recover its costs in this court.

BERNSTEIN, J., having served as trial judge, announced his disqualification, and the Honorable RAUL H. CASTRO, Judge of Superior Court, Pima County, was called to sit in his stead.

NOTE: This opinion was prepared by Justice LEVI S. UDALL prior to his untimely death on May 30, 1960.

We approve it and release it as a Per Curiam opinion.