ANCALA HOLDINGS, L.L.C., an Arizona limited liability company; Ancala Global Company, L.C., an Arizona limited liability company, Plaintiff–Appellants,

v.

David G. PRICE, as Trustee of the Price Revocable Trust; American Golf Corporation, a California corporation; and National Golf Operating Partnership, L.P., a Delaware Limited Partnership; and National Golf Properties, Inc., a Delaware corporation, Defendants–Appellees.

No. 04–17180.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 2006.

Filed Feb. 5, 2007.

Patrick J. Davis, Esq., Titus Brueckner & Berry, PC, Scottsdale, AZ, for Plaintiff–Appellants.

James D. Hepworth, Esq., Robert C. Baker, Esq., Baker Keener & Nahra, Los Angeles, CA, John W. Storer, Esq., Swenson Storer Andrews & Frazelle PC, Phoenix, AZ, for Defendants–Appellees.

Before: KLEINFELD and BYBEE,

Circuit Judges, and WHALEY *, District Judge.

## MEMORANDUM **

In this diversity action, Ancala Holdings, L.L.C. appeals the district court's summary judgment for David Price, American Golf Corporation, National Golf Operating Partnership, L.P, and National Golf Properties, Inc. (collectively, "American Golf"), in Ancala's action against American Golf to enforce the terms of various agreements, the first of which was executed in 1991, between Ancala and American Golf for the sale and management of a golf course known as the Ancala Country Club. The district court ruled that all of Ancala's claims were barred by the applicable statute of limitations.[1]

We have jurisdiction under 28 U.S.C. § 1291. The district court's grant of summary judgment is reviewed *de novo*. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). This court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.2004).

## I.

The underlying facts are largely undisputed. In 1991, ACM Management Company, Inc. ("ACM"), predecessor in interest to appellants, Ancala Holdings, L.L.C. and Ancala Global Company, L.C., sold fifty-one percent of its interest in the Ancala Country Club to Appellee David Price, trustee for the Price Revocable Trust. The Ancala Country Club consisted of an 18–hole golf course and a temporary club house.[2] At the same time, ACM entered into a Golf Course Management Agreement with American Golf Corporation in which American Golf agreed to manage and operate the golf course in "a manner comparable to and consistent with the management and operational practices of AGC at Other AGC Golf Courses and Country Clubs that are premium private country clubs." As part of the sale of the Ancala Golf Course, the parties agreed that ACM would receive transfer payments for the resale of any existing golf memberships in which ACM had an interest—roughly 108 memberships. These memberships were referred to as the "Barton Memberships."

In 1993, ACM sold its remaining forty-nine percent interest to David Price, as trustee for the Price Revocable Trust. As part of the Purchase and Sale Agreement, the Trust agreed that "it will manage and operate the Ancala Golf Course in a manner comparable to and consistent with the management and operational practices of AGC at other AGC golf courses and country clubs that are premium private country clubs."

On September 8, 1994, ACM sent a letter to the Price Trust threatening legal action to enforce the 1991 and 1993 Agreements, along with a draft complaint. The draft complaint included claims for breach

---

* The Honorable Robert H. Whaley, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. In this appeal, Ancala challenges only the dismissal of the breach of contract claims asserted in counts I and II of its complaint.

2. The Ancala Country Club was to be the centerpiece of a residential development that was owned by ACM Management Company, Inc. at the time.

of contract for failing to maintain a premium golf course, and a breach of contract claim regarding the Barton memberships. ACM alleged that the agreements had been materially breached and stated it would be seeking rescission of the contracts and the return of the Ancala Country Club to ACM.

In a memo dated November 8, 1994, Richard Barton expressed concerns to Jim Barton regarding American Golf's management of the Ancala Country Club.[3] In a letter dated December 7, 1994, addressed to David Price, James Barton, manager of ACM, expressed his frustration that "Ancala has not been run by American Golf as a premium private club as required by our Agreement with you. This must change."

Sometime in April 1995, a meeting took place between ACM and American Golf. In an April 26, 1995, letter summarizing the agreements made at the meeting, David Price stated that American Golf expected the new clubhouse to be completed by September 1995, and that it would continue to operate Ancala Country Club as a premium private country club. In response to the letter, Richard Barton wrote a memo, dated May 2, 1995, in which he stated that Price's letter "implies that American Golf has operated the club in the past as a premium private club. I don't think they have in the past but I do think they are now and hope they do in the future."

The permanent clubhouse was eventually completed in October 1995, and an experienced manager was hired.

On November 11, 2000, Ancala Holding, LLC. and Ancala Global Co., L.L.C., filed a complaint in U.S. District Court for the District of Arizona against David G. Price; American Golf Corporation; National Golf Operating Partnership, L.P.; and National Golf Properties, Inc.

## II.

In granting American Golf's motion for summary judgment, the district court ruled that Ancala's breach of contract claims were barred by the six-year statute of limitations as set forth in A.R.S. § 12–548.

In so ruling, the district court concluded that Ancala was alleging a breach of contract claim to operate the Ancala Country Club as a "premium private country club" that occurred continuously since 1991, with the exception of the three-week interruption, and that Ancala had known about the alleged breach since 1991. In a footnote, the district court concluded that because Ancala addressed the Barton memberships in the 1994 draft complaint, its complaint for breach of contract with regard to these memberships was also barred by the statute of limitations.

Ancala argues the district court erred in ruling as a matter of law the statute of limitations barred its breach of contract claims with regard to operating the Ancala Country Club as a premium golf course, and it erred in ruling on summary judgment on as to the Barton Memberships because questions of fact existed with regard to its breach of contract claim regarding the memberships.

## III.

This is a diversity action that involves a breach of contract law claim and Arizona law governs the analysis. *Moore v. Home Ins. Co.,* 601 F.2d 1072, 1074 (9th Cir. 1979). The district court applied the Arizona six year statute of limitations that is applicable to actions on written contracts. A.R.S. § 12–548; *Woodward v. Chirco*

---

3. Richard Barton and James Barton were involved with ACM Management Company, Inc.

Constr. Co., 687 P.2d 1269, 1271, 141 Ariz. 514, 516 (Ariz.1984). Generally, Arizona courts strongly disfavor the statute of limitations defense. *Manterola v. Farmers Ins. Exch.,* 30 P.3d 639, 642, 200 Ariz. 572, 575 (Ariz.Ct.App.2001). Nevertheless, courts have recognized that the statute of limitations serves to protect defendants and courts from stale claims where plaintiffs have slept on their rights. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.,* 898 P.2d 964, 968, 182 Ariz. 586, 590 (Ariz.1995).

Under Arizona law, the accrual of a cause of action means the right to institute and maintain a suit. *Pioneer Roofing Co. v. Mardian Constr. Co.,* 733 P.2d 652, 660, 152 Ariz. 455, 463 (Ariz.App. Div.1986). Thus, the statute of limitations commences when one party is able to sue another. *Gust,* 898 P.2d at 966, 182 Ariz. at 588.

The district court found that Ancala knew by 1991 that American Golf was breaching its agreement to operate the Ancala Country Club as a "premium private country club." The district court relied on the September 8, 1994, letter written by Ancala that threatened to take legal action as well as the drafted complaint, and used this date as the latest date from which Ancala knew of the breach.

Ancala argues that because American Golf continued to breach the 1991 and the 1993 Agreements every day that it failed to operate the golf course as a premium private country club, a new cause of action accrued. Ancala contends that, rather than bar Ancala's claims, the statute of limitations operates to limit the amount of damages to only those damages that occurred in the six years prior to November 11, 2000.

In certain situations, Arizona courts have relied on the theory of "continuous breach" in determining when a cause of action begins to accrue. In *Builders Sup-* *ply Corp. v. Marshall,* the court held that a cause of action accrues each time a defendant fails to perform as required under the contract. 352 P.2d 982, 986, 88 Ariz. 89, 95 (Ariz.1960) (per curiam). In that case, the parties entered into a contract in which the plaintiff agreed to haul the defendant's products, and the defendant agreed to pay the plaintiff an agreed upon rate. *Id.* at 984, 88 Ariz. at 92. The defendant paid the plaintiff a lesser amount than set forth in the contract. *Id.* There, the court held that each successive and continuing underpayment amounted to a separate breach. *Id.* at 986, 88 Ariz. at 95.

Here, the district court was correct in holding that the "continuous breach" theory does not extend the statute of limitations for Ancala's breach of contract claim for failing to operate the golf course as a premium private country club. Under Arizona law, the continuing violation notion is an exception to the statute of limitations, not the rule, and it applies to recurring payments that have become due. Once a party fails to pay the agreed upon amount at the time the payment is due, a separate breach occurs and a cause of action accrues. The damages for each breach is severable from the damages suffered from the original breach and any subsequent breach of the defendant's obligation to pay an agreed upon amount.

In this case, American Golf's alleged breach for failing to operate the golf course as a premium private country club was not continuous in such a way as to qualify for the exception to the statute of limitations. The breach began to accrue when Ancala determined that American Golf was failing to operate the Country Club as a premium golf course, which could be as early as 1991, but clearly was no later than September 1994. While the breach continued to occur because Ameri-

can Golf failed to cure the initial breach, it was not "continuous" in the sense that a separate and discrete obligation to operate the golf course in a certain manner accrued each day. Moreover, unlike a failure-to-pay type of continuous breach, the damages alleged by Ancala cannot be severed for each alleged daily breach.

## IV.

As American Golf acknowledged at oral argument, there was no evidence in the record that any of the Barton fees were not paid. Thus, the dismissal of this count was proper. At oral argument, American Golf correctly conceded that the dismissal of the Barton claims applied only to those that were pleaded, and the statute of limitations would not bar future claims for Barton fees that may become due.

**AFFIRMED.**

BYBEE, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's finding that the district court properly dismissed Ancala's claims as to the Barton fees. However, I disagree with the majority's finding that the district court properly dismissed Ancala's claims for breach of failure to operate the golf course as a premium private country club. For this reason, I respectfully dissent.

It is a generally recognized principle that "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously." 54 C.J.S. *Limitations of Actions* § 183 (2006); *see also Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 80, 430 N.Y.S.2d 179 (N.Y.App.Div. 1980); 4 CORBIN ON CONTRACTS § 956 at 841 (1951). Although Arizona courts have not addressed the issue, many states have, and under facts similar to those presented here courts have recognized that the statute of limitations in cases involving continuing obligations accrues at each successive breach of the obligation rather than exclusively upon the first breach. *See, e.g., Hi–Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1408–09 (7th Cir.1993) (continuing duty in non-compete contract); *Nat'l R.R. Passenger Corp. v. Notter*, 677 F.Supp. 1, 5 (D.D.C.1987) (continuing duty to bill correctly for janitorial services); *Christmas v. Virgin Islands Water & Power Auth.*, 527 F.Supp. 843, 848 (D.Vi.1981) (continuous obligation to maintain and repair electrical lines); *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 940–41, 744 N.Y.S.2d 586 (N.Y.App.Div.2002) (continuing obligation to provide code compliance for septic system); *1050 Tenants Corp. v. Lapidus*, 289 A.D.2d 145, 146–47, 735 N.Y.S.2d 47 (N.Y.App.Div.2001) (continuing obligation to comply with lease term to refrain from interfering with other lessees' rights characterized as ongoing maintenance duty); *Lake St. Louis Comm. Ass'n v. Oak Bluff Pres.*, 956 S.W.2d 305, 309–310 (Mo.Ct. App.1997) (continuing duty to maintain a marina meant that breach caused "fresh injury" each day); *State ex rel. Dept. of Transp. v. Cent. Tel. Co. of Nevada*, 107 Nev. 898, 822 P.2d 1108, 1110 (1991) (continuing duty to "maintain [an] underground conduit in good and safe condition" gave rise to liability for injury that occurred nineteen years later); *Singer Co. v. Baltimore Gas & Elec. Co.*, 79 Md.App. 461, 558 A.2d 419, 425–26 (Md.1989) (continuing obligation to supply electrical power); *Barker v. Jeremiasen*, 676 P.2d 1259, 1261–62 (Colo.Ct.App.1984) (continuing duty to refrain from "noxious or offensive activities" that may disturb the neighborhood); *Thorpe v. Schoenbrun*, 202 Pa.Super. 375, 195 A.2d 870, 871–74 (1963) (continuing obligation to "contract of service to

preserve the [plaintiff's] eyesight"); *Indian Territory Illuminating Oil Co. v. Rosamond,* 190 Okla. 46, 120 P.2d 349, 352–54 (1941) (continuing obligation to "protect the land from drainage by adjoining wells").

I would find that the obligation to maintain the Ancala Country Club in "a manner comparable to and consistent with the management and operational practices of AGC at Other AGC golf courses and country clubs that are premium private country clubs" is a continuing one. Accordingly, I would reverse the grant of summary judgment on the breach of contract claim for failure to operate the Ancala Country Club as a premium golf course and remand for further fact-finding as to whether any breaches occurred within the six-year limitations period.