## MORRIS v. RUSSELL et ux.

No. 7630. Decided October 16, 1951. (236 P. 2d 451.)

See 54 C. J. S., Limitation of Actions, sec. 151. Insane person as party to action. 28 Am. Jur., Insane and Other Incompetent Persons, secs. 102 et seq.

*Perry H. Burnham, Richards & Bird* and *Dan S. Bushnell,* Salt Lake City, for appellants.

*Elliott W. Evans* and *Mary Condas,* Salt Lake City, for respondent.

CROCKETT, Justice.

This action was started by William Shields to recover money for working for the defendants. A jury awarded him $4,500. Shields died after the trial; his administrator is respondent on this appeal.

Defendants rely on three points in seeking reversal:

(1) That it was error for the court to vacate its order dismissing the quantum meruit count following the close of the plaintiff's case and to submit the case to the jury on that theory.

(2) That the court erred in refusing to grant a new trial based on the evidence of plaintiff's insanity, and

(3) That the court erred in permitting the jury to award damages beyond the four-year statute of limitations.

Shields began working for the defendant some time in 1941, as a result of having been referred to them by the Salavation Army. The defendants then owned a small farm; the arrangement was that Shields was to do light work on the farm for his board and room plus occasional small amounts of money for tobacco and other personal incidentals.

In June of 1943, the defendants sold the farm and bought a motor court. The evidence is in dispute as to what happened concerning Shields accompanying them to the motor court. He having prevailed, he is entitled to the most favorable interpretation of the evidence. He testified that the defendants offered him big wages, plus board and room, if he would go with them to the motor court and help maintain it, and that later the big wages were fixed at $100 per month. He at no time received $100 per month, but, with the possibility of a few small exceptions he did not receive any different payments than he had received on the farm. Shields' testimony about this was that he didn't need the money and he figured that when the defendants got ready to sell or got through with him they would pay him. The relationship was terminated in August of 1949 and Shields commenced this action in February of 1950.

Plaintiff pleaded in one count an express contract of $100 per month and another count for quantum meruit for the reasonable value of his services. At the trial, after the presentation of the plaintiff's evidence, the court granted defendants' motion to strike the quantum meruit count and informed defendants' counsel that he could limit his defense to the express contract. On the following day, after the presentation of evidence by the defendants, Shields'

counsel moved for reinstatement of the quantum meruit count; the court vacated his former ruling and reinstated it.

Defendants say that quantum meruit could not properly be submitted to the jury since both parties pleaded an express contract and the evidence sustains that there was such a contract. It may be true that where both parties allege the same express contract, it is improper to submit the case to the jury on quantum meruit. That principle does not apply in this case. The essence of the defendants admission of an express contract here is in fact a denial of the express contract alleged by the plaintiff; they merely admitted that the plaintiff was to work for them, but denied that they were to pay for the same. That being so, it was not error for the plaintiff to have his case submitted both on the express contract which he claimed and the defendants denied, and also on quantum meruit, the same as if there had been a general denial both of the services rendered and also the obligation to pay therefor.

The Utah Rules of Civil Procedure, adopted to inject liberality into procedural matters, in Rule 8(c) (2) provides:

"* * * A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both."

and see also Rule 54(c) (1), which provides in part:

"every final judgment shall grant the relief to which the party * * * is entitled, even if the party has not demanded such relief in his pleadings. * * *"

In the present case, the possibilities under the proof were:

(1) A contract such as the plaintiff contended providing for room and board plus $100 per month;

(2) A contract such as defendants contend, providing for room and board plus pocket money in exchange for light work;

(3) A combination of (2) above with Shields doing work beyond the light work required under the contract and under such circumstances that he could reasonably expect to receive compensation therefor. There was evidence both from Shields and others that he worked long hours as a "man of all work" seven days a week at every kind of labor in the operation and maintenance of the motor court. The evidence justified the submission of the issue of quantum meruit to the jury.

Defendants also assert that the granting of the motion to strike the count on quantum meruit at the conclusion of the plaintiff's evidence was the equivalent of granting a non-suit; that such dismissal was with prejudice and that it could not be reinstated.

The law in respect to non-suits was formerly that such a judgment did not bar a future action on the same cause of action, *Robinson* v. *Salt Lake City*, 37 Utah 520, 109 P. 817. That rule has been changed by the Utah Rules of Civil Procedure, 41(b), and unless the court indicates to the contrary, such a dismissal operates as a judgment on the merits. Plaintiff, however, refers us to Rule 54(c) (1), U. R. C. P., from which we have heretofore quoted the applicable part, and which provides that every final judgment shall grant the relief to which a party is entitled even if such relief has not been asked for in the pleadings.

Thus, apparently, if the plaintiff proved he was entitled to relief in quantum meruit, it would have been error for the trial court to refuse him that relief even though at an earlier time in the proceedings the court had dismissed the quantum meruit count. Cases decided under the Federal Rules of Civil Procedure, 28 U. S. C. A., from which our rule was taken, illustrate that this is true. United States for use

of *Susi Contracting Co.* v. *Zara Contracting Co.*, 2 Cir., 146 F. 2d 606; *Michael Del Balso Inc.* v. *Carozza*, 78 U. S. App. D. C. 56, 136 F. 2d 280; *Kansas City, St. L. & C. R. Co.* v. *Alton R. Co.*, 7 Cir., 124 F. 2d 780.

The adding of the quantum meruit count, was the equivalent of permitting an amendment to conform to the proof. The defendants were in no worse position than if the quantum meruit count had not been there in the first place. There is no showing that the defendants were misled or prevented from presenting all their evidence or in any way prejudiced by reinstating the count.

A consideration of the evidence in the record indicates that all matters pertaining to the employment were thoroughly explored by both sides in examining witnesses. Defendants' counsel apparently regarded the issue as still in the case, since before the cause was reinstated, defendants moved for a directed verdict, claiming there was failure of proof on the quantum meruit count. If the ends of justice required it, the court had the power at any time during the trial to vacate the ruling and reinstate the count. For the law to be otherwise might give rise to serious injustices. Suppose, for example, a plaintiff should fail as to his proof on one count, and the same upon proper motion be dismissed, the defendants could by their own evidence prove conclusively that they were liable on such count, in order to defeat recovery on another, then avoid liability entirely upon the technicality that the count had once been dismissed. The rules of procedure are not designed for that purpose and should not be so interpreted or applied as to permit any such mischief. Rule 41(b) must be held to apply only when the granting of the motion rules that there is no right to recover at all; but it does not apply to the facts in this case where the dismissal was as to one theory only and not to the right to recovery.

With respect to the issue of the alleged insanity of the decedent: This matter was raised by motion for a new trial

with supporting affidavits and documents concerning the admission of Shields to the Oregon State Mental Hospital; a counter-affidavit by Shields' doctor was filed attesting to Shields' sanity. Defendant contends that the judgment is void because the plaintiff did not proceed by guardian ad litem. The rule requiring guardians for incompetents is for their protection. Its purpose is not to burden nor hinder them in enforcing their rights; nor to confer any privilege or advantage on persons who claim adversely to them or who may be trying to take advantage of them. Even if it should be conceded that Shields was insane, he would still be entitled to the benefits of either his express or implied contracts for compensation for services performed. The plaintiff's counter-affidavit recites that the information concerning Shields' alleged insanity was known to the defendants' counsel (not his counsel on this appeal, but his former counsel) and that it was discussed by counsel during the trial. The trial court would have been justified in concluding that the question of capacity to sue was waived, not having been timely raised. *Tooele Meat & Storage Co.* v. *Elite Candy Co.*, 57 Utah 1, 168 P. 427; *Blumauer* v. *Clock*, 24 Wash. 596, 64 P. 844.

This defense of Shields' alleged insanity seems a bit strange. For nine years he worked, took his meals, and practically lived with defendants and they enjoyed the benefits of his labor. Then, after they lost this suit, they suddenly come forth with a claim that he was insane before he came to work for them. The situation requires no further comment. No error was committed by the refusal to grant a new trial because of Shields' alleged insanity.

Defendants contend that the statute of limitation, Sec. 104-2-23, U. C. A. 1943, applies so that the plaintiff can recover only for four years prior to the commencement of this action. Plaintiff claims that the board and room allowed, plus the pocket money, constitute a part payment in recognition of the obligation, which prevented the statute from running; and also claims that in

any event this case comes within the exception to the statute above referred to pertaining to open accounts. The items of board and room and pocket money which were paid by the defendants is consistent with their contention that this was the extent of their obligation and nothing more, and can scarcely be considered an acknowledgment of a greater liability. Plaintiff himself did not claim to have received any greater payments. His evidence does not indicate it to be the type of situation covered by the statutory exception relating to open accounts. The facts are not similar to the cases relied upon by plaintiff such as *Gulbranson* v. *Thompson*, 63 Utah 115, 222 P. 590. In that case, recovery was allowed for longer than a four-year period. There, a daughter took care of her mother continuously until her death and any anticipated compensation was reasonably assumed to abide that event. In other similar cases, where compensation was allowed for a longer period will be noted that in each instance there was some future contingency to occur such as the death of the person cared for, his getting well, selling the farm, or other definite contingency before the duty to pay arose. In the present case, there was no such future contingency to look forward to. From the plaintiff's own evidence, it could only be concluded that his services were compensable monthly. This being so, the statute would begin to run at the end of each month. Thus, it has run against any payments due more than four years prior to the date of the filing of this suit, February 14, 1950, and the court erred in allowing the jury to consider any compensation before February 14, 1946.

Shields did the same general nature of work for the defendants during the entire period from 1943 to 1949. There would be no basis for us to say that the jury awarded different rates of pay for different months during that time. Plaintiff did on about three occasions do some other work for a few days for which he received compensation. However, the verdict of $4,500 was rendered

for the entire period and the jury must have taken these amounts into account. We conclude that the sum awarded was intended to compensate for each month at the same rate for the general work he did for defendants.

We are sensitive of the manifest unfairness which would eventuate, as suggested by plaintiff, if the case were sent back for a new trial when Shields is dead and he would therefore not have the benefit of his personal presence and testimony on a new trial. On the other hand, to permit the awarding of compensation for the entire period from 1943 to 1949, obviously allowed recovery for wages for too long a period of time. This does not necessarily require a reversal of the judgment, since only a mathematical computation is required to determine what portion of the verdict is sustainable.

From June of 1943 when Shields started work for defendants, until August 1949, when the relationship was terminated, is a period of 74 months. Of this time, 32 months were before February 14, 1946, and 42 months afterward. Therefore, plaintiff is entitled to recover only for the 42 months. Pro-rating the jury verdict of $4,500 over the 74 months period allocates $1,945.95 of that verdict to the period prior to February 14, 1946, and $2,554.05 to the period since February 14, 1946, to which amount plaintiff is entitled. The case is similar to the case of *Smith* v. *Ogle,* 196 Okl. 295, 164 P. 2d 992. In that case, involving a suit to collect wages for work done, the jury by the instructions was allowed to consider a two-month period which was barred by a three-year statute of limitations, in addition to the time which was not barred by limitations. The court by a mathematical computation determined the amount for which judgment should be rendered, and ordered a remittitur of the excess amount. For other cases announcing the same principle, see *Cook* v. *City of Booker,* Tex. Civ. App., 167 S. W. 2d 232; *Columbia Amusement Co.* v. *Rye,* 288 Ky. 179, 155 S. W. 2d 727; *Watts* v. *Chreste,* 270 Ky. 407, 109 S. W. 2d 803; *Ginsburg* v. *Prudential Ins.*

*Co. of America,* 294 Ill. App. 324, 13 N. E. 2d 792; *Simmons* v. *Wilkin,* 80 Utah 362, 15 P. 2d 321.

Following the procedure of *Shepard* v. *Payne,* 60 Utah 140, 206 P. 1098; *Falkenberg* v. *Neff,* 72 Utah 258, 269 P. 1008; *Simmons* v. *Wilkin,* 80 Utah 362, 15 P. 2d 321; and *Duffy* v. *Union Pac. R. Co.,* 118 Utah 82, 218 P. 2d 1080, it is ordered that a new trial be granted, unless plaintiff shall, within twenty days from the date of the filing of this opinion, file in this court a remittitur of $1,945.95; if such remittitur be filed, the judgment then to be modified in accordance therewith, and, as so modified, affirmed, with no award of costs on appeal to either party.

WOLFE, C. J., and WADE, McDONOUGH and HENRIOD, JJ., concur.