CAREY, Guardian *ad litem,* Respondent, v. DAIRYLAND MUTUAL INSURANCE COMPANY, Appellant.

*No. 64. Argued November 26, 1968.—Decided December 20, 1968.* (Also reported in 163 N. W. 2d 200.)

110

111

112

For the appellant there was a brief by *Wilcox & Wilcox* of Eau Claire, and oral argument by *Francis J. Wilcox*.

For the respondent there was a brief and oral argument by *Frank W. Auer* of Eau Claire.

HANLEY, J. The primary dispute in this appeal concerns the result of the negotiations between Mr. Carey and Mr. Sinclair. It is Dairyland's position that these negotiations resulted in the making of a settlement offer, that the offer was not accepted for almost three years, and that the change of circumstances between the making of the offer and its acceptance, namely, the running of the statute of limitations on the commencement of a personal injury action made the acceptance ineffective to create an agreement.

Respondent contends that the negotiations led to a binding agreement, the performance of which depended upon the occurrence of two conditions: (1) The appointment of a guardian *ad litem;* and (2) the approval of the settlement by the trial court.

From the above contentions the issues appear to be:

(1) Did the negotiations result in a settlement agreement; and

(2) Did the delay following the submission of the agreement (or offer) to the county court make the approval (or acceptance) ineffective?

*Results of Negotiations.*

The trial court specifically stated in its findings of fact that:

". . . the parties hereto did negotiate and agree by offer on the part of defendant and acceptance on the part of the plaintiff to the settlement and compromise of a tort cause of action as more fully set forth in the complaint herein, said offer and acceptance being conditional and predicated upon approval by this Court, as required pursuant to Section 269.80 (2), Wisconsin Statutes."

The pertinent allegations in the complaint which were adopted by the trial court as its findings of fact as set out above appear to be:

"That, pursuant to the authority granted to him as Guardian Ad Litem, the plaintiff herein did negotiate a compromise and settlement of the liability of the said Marvin Michels and the said Dairyland Mutual Insurance Company with the duly authorized representatives of said defendant, and that the said parties hereto did mutually agree, prior to the 6th day of December, 1962, to settle and compromise the alleged liability of the said Marvin Michels and Dairyland Mutual Insurance Company, as insurer, in the sum of Nine Thousand and no/100 Dollars ($9,000.00), and did, on the 6th day of December, 1962, petition the County Court for Dunn County, State of Wisconsin, for an order approving said settlement and agreement, pursuant to Section 269.80 (2), Wisconsin Statutes."

"A trial court's finding of fact made on conflicting evidence should not be set aside if a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached that conclusion. . . ." *McManus v. Hinney* (1967), 35 Wis. 2d 433, 441, 151 N. W. 2d 44, and cases cited therein.

The gist of the appellant's objection to the findings of fact is that the respondent did not consent to act as guardian *ad litem* until December 6, 1962. Thus, it is contended, Mr. Carey could not, and did not, have authority to enter a settlement contract *until* December 6th. Yet the trial court found that the settlement contract was entered into "prior to" December 6, 1962. Appellant concludes that since Mr. Brown was legally incompetent, until the guardian *ad litem* was appointed and consented to act, no one could expressly authorize Mr. Carey to enter a settlement agreement.

It is true that an attorney must be expressly authorized to compromise a client's cause of action for personal injuries. *Krueger v. Herman Mut. Ins. Co.* (1966), 30 Wis. 2d 31, 139 N. W. 2d 592.[4] However, there is no doubt that Mr. Sinclair, Dairyland's representative, negotiated with Mr. Carey prior to the December 6th hearing with the full knowledge that a guardian *ad litem* would have to be appointed and that the court would have to approve the settlement before it became final. Mr. Sinclair's testimony in that regard is as follows:

"*Q.* You made the offer of nine thousand dollars? *A.* Right.
"*Q.* Mr. Carey said it was agreeable to him? *A.* Well, I don't know if he agreed right that day, but he subsequently agreed that this was an acceptable offer.
"*Q.* And it was understood or discussed that he would have a guardian *ad litem* appointed? *A.* Right.
"*Q.* And that you would have to have an approval of the Court? *A.* Right."

There is additional evidence that prior to the December 6, 1962, hearing, Mr. Sinclair was fully informed that Mr. Carey was going to act as the guardian *ad litem* in this matter. Mr. Carey was appointed the guardian

---

[4] Possibly Mrs. Brown, who was appointed general guardian of Mr. Brown, could have authorized the settlement agreement. However, Mr. Carey testified that the agreement had been made before Mrs. Brown was appointed general guardian.

*ad litem* on November 19, 1962 (although he did not file his consent to act as such until December 6, 1962). Prior to the December 6, 1962, hearing, Mr. Sinclair received a copy of the draft of the order appointing Mr. Carey the guardian *ad litem* and a copy of the petition for the approval of the settlement.

Prior to the hearing on December 6, 1962, Mr. Sinclair, Dairyland's representative, negotiated with Mr. Carey with full knowledge of Mr. Carey's actual authority and with full knowledge that Mr. Carey would be appointed guardian *ad litem*. No objection was ever raised at any time concerning Mr. Carey's authority to negotiate. Dairyland should now be estopped from raising that objection on this appeal.[5]

Dairyland also contends that Mr. Sinclair did not have the authority to bind Dairyland to a settlement contract. The record amply refutes that contention.

"*Q*. . . . Did you some time during the spring of 1962 receive authority from your company to attempt to adjust the Brown claim? *A*. [Mr. Sinclair] Yes.

"*Q*. Did that authority come before or after you had had some negotiations and discussions with Mr. Carey? *A*. After.

"*Q*. And what was the figure that you received authority to adjust this claim on? *A*. My recollection is it was up to nine thousand dollars.

"*. . .*

"*Q*. After you received the authority from your company what did you do? . . . *A*. . . . ultimately I offered him nine thousand dollars."

[5] Even if the trial court's finding (that the settlement agreement was reached "prior to" December 6, 1962) was not supported in the record, it is obvious that Mr. Sinclair's statements in open court on December 6, 1962, constituted at least an offer which was immediately accepted by the guardian *ad litem* when he petitioned the court for an order "approving said settlement." It is the function of the trial court under sec. 269.80 (2), Stats., to approve or disapprove a settlement agreement. It is not the function of the trial court under that section to entertain offers or to negotiate settlements.

Dairyland now contends that although Mr. Sinclair was authorized to *offer* $9,000, he was not authorized to enter into an agreement to pay $9,000.

An authorized offer from an insurance company, if accepted (and assuming consideration), must be held to create a settlement contract.[6] Mr. Sinclair never conditioned the settlement offer upon approval by Dairyland. That approval of Dairyland was obtained before the offer was ever made, and Dairyland never disavowed Mr. Sinclair's actions on its behalf.

There is not even a question in this case as to whether Mr. Carey accepted the offer. It is undisputed that he did so. The question is, however, whether he had the authority to accept it. As previously set out, we believe Dairyland should be estopped from denying Mr. Carey's authority to settle on behalf of Mr. Brown. It follows, therefore, that there was an offer and an acceptance. There was obvious consideration. The contract which

---

[6] This case is thus distinguished from *Goetz v. State Farm Mut. Automobile Ins. Co.* (1966), 31 Wis. 2d 267, 142 N. W. 2d 804, where the authority of the adjuster to bind the insurance company could not be established. In *Goetz* the adjuster was not authorized to make any offer, let alone an offer up to a particular amount. The court there stated at page 273:

". . . We do not hold an insurance adjuster cannot enter into a valid contract of settlement . . . but . . . the authority [to enter into the contract] . . . must be pleaded to state a cause of action against the insurance company."

In this case the authority of the representative of Dairyland to enter into the contract was both pleaded and proved.

". . . When an insurance company delegates the power of adjustment, an adjuster so employed has the power to make arrangements with the insured after loss, and to bind the insurer thereby." *Zager v. Gubernick* (1965), 205 Pa. Super. 168, 173, 208 Atl. 2d 45, 48, 49.

". . . an agent with power 'to adjust a loss' has authority to bind the insurer by an agreement of settlement, . . ." 4 Couch, *Insurance* (2d ed.), p. 265, sec. 26:327.

was immediately created was not enforceable until two conditions were met:

1. A guardian *ad litem* had to be appointed; and
2. The approval of the court had to be obtained pursuant to sec. 269.80 (2), Stats.

We conclude from the evidence presented that a conditional settlement contract had been agreed to by authorized representatives of the parties prior to December 6, 1962.

### Effect of Approval Delay.

Although it has already been established that Dairyland's offer was accepted prior to the December 6, 1962, hearing, it is still important to determine the effect of the delay in the approval of the settlement contract until March 24, 1965.

It is undisputed that neither the appellant nor the respondent ever made any effort to withdraw the settlement agreement from the trial court's consideration. It is also undisputed that the two conditions upon which the enforcement of the contract hinged were eventually fulfilled; one, when the guardian *ad litem* was appointed on December 6, 1962, and the other when the order approving the settlement issued on March 24, 1965. Nor is there any contention here that the guardian *ad litem* has ever objected to signing any form of release submitted by the appellant. The only argument is that the passage of time and the running of the statute of limitations on the personal injury action had so changed the situation that the contract could no longer be enforced.

We think the appellant's claim of a change of circumstances based on the running of the statute of limitations is without merit. We hold that the filing of a petition for approval of a settlement agreement under sec. 269.80 (2), Stats., tolls the statute of limitations on the cause of action involved until a decision is rendered

on the petition. Such a proceeding, we think, is equivalent to the commencement of an action.

The above conclusion, however, is not essential to this case. Ordinary contract principles lead to an identical result.

"The law is well settled that time will not be regarded as of the essence unless it is made so by the terms of the contract or the conduct of the parties." *Rottman v. Endejan* (1959), 6 Wis. 2d 221, 225, 94 N. W. 2d 596.

The parties to this settlement contract never specified a time within which the conditions precedent [7] had to be met, nor the time within which the contract was to be performed.

" 'If a party means to rescind a contract because of the failure of the other party to perform it, he should give a clear notice of his intention to do so, and where time is not of the essence of the contract he must give the other party a reasonable time thereafter to comply . . . .' " 17 C. J. S., *Contracts*, p. 918, sec. 435 (now 17A C. J. S., *Contracts*, p. 540, sec. 435), as quoted in *Guentner v. Gnagi* (1951), 258 Wis. 383, 391, 46 N. W. 2d 194.

There is testimony in this case that Mr. Sinclair was fully informed concerning the reasons for the delay in the approval of the petition. The record does not contain any indication that Mr. Sinclair or any other representative of Dairyland ever objected to the delay. Dairyland never attempted to rescind the agreement or to set a final date for performance. The only objection ever made was after the petition for settlement was approved and demand was made for performance.

We conclude that the trial court was correct in granting judgment in favor of the plaintiff.

*By the Court.*—Judgment affirmed.

---

[7] " '. . . Condition precedent' is one calling for performance of some act after the contract is entered into on performance of which the obligations depend." 5 Williston, *Contracts* (3d ed.), pp. 142, 143, sec. 666A.