Weather-Gard Industries, Inc., Plaintiff-Appellant, v. Fairfield Savings & Loan Association, Defendant-Appellee.

Gen. No. 53,301.

First District, First Division.

April 21, 1969.

Albert E. Jenner, Jr., and John G. Stifler, of Chicago (Raymond, Mayer, Jenner & Block, of counsel), for appellant.

David L. Gomberg and Robert J. Sharfman, of Chicago (Gomberg, Levin and Rosen, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This appeal is taken from a summary judgment entered in the Circuit Court in favor of the defendant, based solely on the pleadings and sworn statements contained in answers to interrogatories and on the deposition of plaintiff's president. The plaintiff, Weather-Gard Industries, Inc. (hereinafter referred to as Weather-Gard), had filed a complaint in four counts [1] against the defendant, Fairfield Savings & Loan Association (hereinafter referred to as Fairfield) for breach of contract to provide financing for home improvements.

In Count I of its amended complaint, Weather-Gard alleged that it had completed four home improvement contracts with its customers entitling it to receive funds which Fairfield offered to provide with respect to each account. In Count II plaintiff complained that Fairfield refused to provide financing for 26 additional home improvement contracts which plaintiff had partially fulfilled in reliance upon Fairfield's promise to provide financing. Plaintiff alleged in Count III that Fairfield required plaintiff's president to execute an invalid contract under conditions amounting to duress, whereby Fairfield unlawfully withheld over $52,000 from an $82,000 "reserve fund" on executed home improvement contracts.

It is necessary to set out the pleadings in some detail. The plaintiff alleged in Count I that in accordance with the usual, customary and normal procedure, it secured sales contracts for remodelling jobs from four named customers. Various notices from Fairfield were sent to these customers for home improvement loans, copies of

---

[1] The fourth count of the complaint was abandoned by plaintiff during oral argument.

14

which were sent to Weather-Gard indicating the credit of the customers to be satisfactory and indicating defendant's intentions to make the loan by disbursing the funds when all necessary documents, including a certificate indicating that the work had been completed, were received in proper order. Based upon the intent and offer of the defendant, plaintiff completed all the work and delivered the various documents requested by the defendant, but defendant returned the documents and refused to pay plaintiff the sum due under said contracts. It was further alleged that a contract existed between the parties by virtue of the offer of defendant by sending advance notices to the applicant and dealer for a home improvement loan and the acceptance thereof by the customer and plaintiff; or, in the alternative, that by virtue of a course of dealing in accordance with the usual, customary and normal procedure a contract exists between the parties by virtue of plaintiff's performance based upon the intent of defendant to disburse the funds upon completion of the work; or, in the alternative, the defendant should be estopped to deny that a contract exists between the parties, having placed plaintiff in the position of completing the work after indicating defendant's intention to make the loan.

Count II realleges the foregoing allegations and sets forth 26 additional contracts under which plaintiff had expended substantial amounts of time and money. It alleged that plaintiff was ready, willing and able to complete all of the work and to deliver all the necessary documents upon completion of the work; that all the contracts and contract purchasers were approved by defendant in writing and defendant agreed to accept the loan on completion of the work prior to the commencement of any work by plaintiff; and that plaintiff commenced work on each of said contracts, but subsequent to the commencement of said work and after expenditures were made by plaintiff, defendant notified plaintiff

15

that defendant would not accept such approved "deals." As a result of the unilateral action of defendant, the plaintiff alleges that it suffered damages and loss of profit.

In Count III plaintiff sought to nullify a "reserve agreement" which provided that 10% of each loan, except F. H. A. loans, were to be withheld by defendant until final cash disbursement of the gross amount of the contract. Weather-Gard alleges that because there was an absence of consideration and because they had agreed to Fairfield's terms under duress, the "reserve fund" should be returned.

The defendant filed an answer to all counts of the complaint. In its answer to Count I Fairfield denied that a contract existed between plaintiff and defendant by virtue of an offer by defendant in the form of sending of advance notices to the loan applicants and plaintiff, and denied acceptance thereof by the applicant or plaintiff. The defendant further denied that its dealings with plaintiff gave rise to a contract between it and plaintiff and denied that a contract to purchase said notes existed by virtue of plaintiff's performance based upon defendant's intention to disburse funds upon completion of work and presentation of documents. The defendant further denied that plaintiff is entitled to invoke an estoppel against it thus denying it the right to deny the existence of a contract by virtue of plaintiff's having allegedly completed the work under its various contracts on the strength of defendant's intentions in the advance notice.

The defendant answered Count II of Weather-Gard's complaint by denying that there was at any time an offer pending, in the form of said advance notices, or that said advance notices constituted an offer by the defendant, that its dealings with plaintiff gave rise to a contract between it and plaintiff, and that a contract to purchase said notes existed by virtue of plaintiff's partial performance based upon disbursed funds upon completion

16

of work and presentation of documents; denied that plaintiff was ready, willing and able to complete all the work as described or that plaintiff suffered losses. The defendant further denied that plaintiff is entitled to invoke an estoppel against it.

Fairfield's answer to Count III denied that default occurred on only a few contracts or that it unjustly or unlawfully holds a reserve balance of $52,000 or that plaintiff is entitled to same. Defendant denied that plaintiff is entitled to documents on the defaulted contracts. Further answering, defendant stated that the rights and remedies of the parties are as set forth in the reserve agreement and not otherwise.

The defendant also set up an affirmative defense to the first two counts of the plaintiff's complaint. Briefly stated, the defendant maintains that no contract exists by reason of the advance notice documents in that there was never any offer intended by the defendant to purchase said loans by virtue of said documents; that the advance notice document was merely an expression of defendant's approval of credit of the borrower and no more than an invitation for an offer by plaintiff; that notwithstanding any course of dealings, defendant never intended to enter into a contract with plaintiff with respect to the purchase of said loans; that there was no mutuality of contract existing between the parties with respect to an agreement to purchase the contracts; and that the defendant's refusal to purchase the notes and contracts was conditional upon plaintiff's nonperformance on previous job complaints. A reply was filed to the affirmative defense by plaintiff.

■ The question before this Court is whether the trial court properly entered a summary judgment against the plaintiff. The right to the entry of a summary judgment is created by statute (Ill Rev Stats 1967, c 110, § 57, supplemented by rules 191 and 192 of the Supreme Court, Ill Rev Stats 1967, c 110A, §§ 191, 192). Summary

17

judgment procedure is intended to avoid the expense and delay of a trial where there are no issues of fact, and such judgment can only be granted where there are no triable issues before the court. Section 57 of the Civil Practice Act provides that the plaintiff or defendant may move for a summary judgment with or without supporting affidavits for all or any part of the relief sought; that the opposite party *may* file counteraffidavits, and that judgment shall be rendered if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Printing Mach. Maintenance v. Carton Products Co., 15 Ill App2d 543, 147 NE2d 443.

In the case at bar, the plaintiff contends that the trial court erred in granting defendant's motion for summary judgment on the ground that the present case provides a classic example of a unilateral offer which ripens into a contract when the promisee partially or completely performs the acts required of him and that there was a valid contract as a matter of law. The offer, plaintiff maintains, is contained in the advance notice Fairfield sent to the plaintiff's customers. A copy of this notice was customarily sent to the plaintiff as well. The notices read:

> We have found the credit of ———— to be satisfactory for the net amount of $———— for ———— months under Title 1 of the National Housing Act. Then appears a heading "Weather-Gard Ind." Under this heading it is stated "The face amount of the note will be $———— which includes finance charges and will be payable in installments of $———— per month. It is our intention to make this loan by disbursing the funds to you when all necessary documents including a certificate indicating the work has been completed, are received in proper order, but not earlier than six

days from this date. If you have any questions regarding this transaction, or if we can be helpful in any way, kindly let us hear from you within six days from this date.

The defendant, Fairfield, argues, however, that its offer is a conditional offer made to a customer of the plaintiff, not to the plaintiff. "A plain reading of the 'notice' reveals that it is not addressed to the plaintiff." However, the exhibits show that 16 of the 30 notices attached to the amended complaint are specifically directed "To Weather-Gard" and contain the heading "Advance Notice of Approval to Dealer for Property Improvement Loan." In several instances the word "dealer" was substituted for "Applicant."

The principal case relied upon by the defendant in support of this point is L. B. Herbst Corp. v. Northern Illinois Corp., 99 Ill App2d 101, 241 NE2d 125. There the offer to finance was directed by the defendant company to a third party, not the plaintiff. The third party rejected the tender of performance as not fulfilling the terms of the contract. Furthermore, this finding was based on disputed evidence which was resolved only after a full trial. We cannot see why Herbst is applicable on the facts to the case before us.

The defendant also maintains that Weather-Gard had already signed a contract with its customer at the time Fairfield was first contacted by the plaintiff. Nothing the defendant could have done would have altered or improved upon the agreement already existing between the plaintiff, who was obligated to do the work, and the customer, who was obligated to pay the plaintiff for it. The plaintiff gave up nothing and received nothing to which it was not already entitled to under the terms of its agreement with its customer. It is argued that there was no mutuality between the parties (plaintiff and defendant) and that the plaintiff's interrogatory shows that plaintiff "did not feel legally obligated to the de-

19

fendant to bring all (or any) of its business to this lender."

Weather-Gard's complaint alleged that Fairfield was their sole source of finance for the previous two and one-half years. In his deposition, Jack Ogron, president of Weather-Gard, stated that practically 100% of its financial dealings during the two and one-half years preceeding the initiating of the present action was with Fairfield. His understanding was that when he brought Fairfield a "deal" they would consider it, or reject it, and if approved it was with an understanding that he would submit all the necessary papers before payment would be made by Fairfield. It appears from the record before us that in those transactions completed before the present action was brought, that when the plaintiff previously brought in the necessary papers payment was made by Fairfield.

■ It is an elementary principle that where a party publishes an offer to the world and before it is withdrawn another acts upon it, the party making the offer is bound to perform his promise. 17 Am Jur2d, Contracts, § 45 (1964). A similar position is taken in the Restatement of Contracts, § 45, which states:

> If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated within the offer, or, if no time is stated therein within a reasonable time.

Also, in many cases it may fairly be said that the party making an offer has impliedly made performance a sufficient acceptance or has waived notice of acceptance. 17 Am Jur2d, Contracts, § 45 (1964).

The defendant cites Streich v. General Motors Corp., 5 Ill App2d 485, 126 NE2d 389, to support its claim of

20

lack of mutuality. In Streich this Court struck down an alleged requirements contract to purchase and sell certain automobile parts as lacking mutuality of obligation. The purported agreement in Streich was bilateral and the Court used the traditional concept of mutuality to test its validity. In the case at bar, however, the alleged agreement is unilateral. In this situation, mutuality as delineated in requirements contract cases is an inappropriate vehicle for analysis since by its very nature a unilateral contract lacks the mutuality of obligation found in a bilateral contract. 1A Corbin, Contracts, § 152, pp 4–6 (1963 ed). For this reason we find the Streich case to be inapposite to the case before us.

The defendant argues that even assuming arguendo that the advance notice was an offer, it was a conditional offer of a unilateral contract. It could only be accepted by complying with all of the conditions of the so-called offer. One of the conditions was the production of a certificate showing that all the work called for by the plaintiff's agreement with customers was completed. "Not one job described in Count II of the complaint was ever completed."

The defendant's argument that a unilateral contract can only be accepted by complete performance ignores the fundamental premises underlying the Restatement of Contracts, §§ 45, 90. Both of these sections recognize that acceptance can be based upon part performance. Also, both sections codify the doctrine which gives effect to the promisee's claim even though the promisor has withdrawn his offer prior to complete performance. Thus, we do not feel that the defendant's argument and the case cited to support it (Campbell Inv. Co. v. Taylor, 246 Ill App 433) [2] are controlling in the case at bar.

---

[2] We note that Campbell involved a single transaction between the parties whereas in the case at bar a series of similar transactions were entered into by the plaintiff and defendant.

■ In Count III of the amended complaint plaintiff claimed that its president was coerced into executing a "reserve agreement." The defendant answers that the best evidence of the lack of actual duress is the adamant position taken by the other officer of the plaintiff present at the execution of the documents that the agreement not be signed. Without considering the merits of either side we must remark that the issue of duress generally is one of fact, to be judged in light of all the circumstances surrounding a given transaction, and we do not believe that the summary judgment proceeding was the proper place to resolve this factual question in the case at bar.

The defendant bolsters its contention of lack of duress by quoting from Stoltze v. Stoltze, 393 Ill 433, 66 NE2d 424. We do not find that Stoltze is determinative of the instant case in that it merely sets forth the general guidelines for judging duress and does not resolve the issue presented by the facts as pleaded in the instant case.

■■ The essence of a motion for summary judgment is that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. Whether an enforceable obligation or a binding agreement arose by reason of Fairfield's notices to plaintiff and to its customers approving their credit and the extent to which plaintiff relied upon the notices are issues of material fact which can only be properly determined at trial. In our opinion, there are genuine issues of fact to be decided in all three counts. The absence of counteraffidavits to defendant's motion for summary judgment does not affect our decision in view of the verified complaint, answers to interrogatories and sworn deposition of the plaintiff's president.

We have purposely refrained from detailing many of the factual issues upon which we have arrived at our determination because much of the facts are in the form

of allegations at this stage of the proceedings and have not been reduced to evidence upon trial. We desire to emphasize that nothing we have said is intended, or is to be construed, as an expression on the merits of the case.

The summary judgment order also recites that Fairfield voluntarily requested that their counterclaim be dismissed without prejudice and it was so ordered. It is plain that this was due to the entry of summary judgment in its favor.

Accordingly, the judgment of the Circuit Court is reversed and the cause is remanded with directions to overrule the defendant's motion for summary judgment, to reinstate Counts I, II and III of plaintiff's complaint and to reinstate the defendant's counterclaim.

Reversed and remanded with directions.

ADESKO, P. J. and MURPHY, J., concur.