**FIRST SECURITY BANK OF UTAH, N. A., a corporation, Plaintiff and Respondent,**

v.

**COLONIAL FORD, INC., LeGrande L. Belnap, and Doris Belnap, Defendants and Appellants.**

**No. 15745.**

Supreme Court of Utah.

June 18, 1979.

H. Ralph Klemm, Salt Lake City, for defendants and appellants.

Steven H. Gunn, Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Plaintiff, First Security Bank (the "bank") brought this suit to recover $37,236.80, the amount remaining due on a promissory note executed by Colonial Ford and guaranteed by LeGrande L. and Doris Belnap.

Colonial Ford failed to answer and a judgment by default was entered against it. The individual defendants, Belnaps, filed an answer alleging that the guaranty they had signed lacked consideration and also that they had been induced to sign it by fraud.[1]

There was a trial to the court in which both parties had ample opportunity and presented evidence in support of their contentions, including the testimony of Mr. and Mrs. Belnap relating to what must be regarded as the critical and controlling issue in this case: whether the defendants had been deceived or imposed upon in obtaining their signatures to the guaranty.

Mr. and Mrs. Belnap were President and Vice President of Colonial Ford. In September of 1976 that corporation's account with plaintiff became overdrawn in the approximate sum of $57,000. As a result of the concern over this overdraft Mr. Ronald Folkersen, manager of plaintiff's branch at which the account was located, contacted the Belnaps by telephone and requested that arrangements be made for payment of the debt. On September 10, 1976, representatives from the bank, including Mr. Folkersen, met with representatives of Colonial Ford, including its attorney Mr. Kenneth Rothey, to discuss payment of the account. The Belnaps were not present at this meeting. The bank's representatives proposed that the overdraft could be paid by means of a promissory note signed by Colonial Ford and co-signed or guaranteed by the Belnaps. Mr. Rothey testified that he voiced some objection to having the Belnaps sign what he characterized as an "unconditional guarantee" but stated he would not object to the Belnaps signing a "guarantee of collection." On September 14, 1976, Mr. Folkersen personally delivered to the Belnaps the guaranty here in controversy for them to sign, which they did. Colonial Ford made some payments on its note and reduced the principal owing to $37,236.80 and then defaulted, whereupon the bank brought suit.

---

1. We are not here concerned with the defendants' contention of lack of consideration, the trial court having correctly ruled against them on that issue.

There was conflict in the testimony concerning the representations made to the Belnaps about signing the guaranty. The defendants testified that Mr. Folkersen told them that the guaranty was prepared in accordance with the conditions proposed by their attorney. Whereas Mr. Folkersen testified: that he explained to the Belnaps that it was their personal guaranty; that that was the reason for its being executed; and that the Belnaps examined the contents of the guaranty and thereafter voluntarily signed it.

The trial court made express findings that defendants Belnap either knew or should have known of the contents of the document they signed; and also that the plaintiff bank had not committed fraud in inducing them to sign.

The defendants do not question (as they of course could not) the prerogative of the trial court to find the issues of fact against them where the evidence was thus in conflict. Their contention is that the trial court erred in denying their motion, made after the presentation of all of the evidence, to amend their answers to allege that they had signed the guaranty under mistake.

In support of their position they place reliance on Rule 15(b) U.R.C.P. and argue that under that rule it was either mandatory to grant such amendment,[2] or even if not mandatory, it was discretionary, and the trial court abused its discretion.

On the question as to whether Rule 15(b) requires that the pleadings be amended, it is pertinent to look at the rule itself. We quote it in its entirety.

When issues not raised by the pleadings are tried by express or implied consent of the parties, they *shall be treated in all respects as if they had been raised by the pleadings.* Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues *may be made* upon mo-

tion of any party at any time, even after the judgment; *but failure to so amend does not affect the result of the trial of these issues.* If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, *the court may allow the pleadings to be amended* when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall grant a continuance, if necessary, to enable the objecting party to meet such evidence.

This rule is in harmony with Rule 54(c)(1) which provides in part:

*Every final judgment shall grant the relief to which the party* in whose favor it is rendered *is entitled, even if* the party has *not demanded* such relief *in his pleadings.* [All emphasis added.]

■■■ Whatever else may be said about whether it is mandatory or discretionary under the rules just quoted to grant such a motion to amend, it could not be made plainer that the underlying purpose of the rules is that judgment should be granted in accordance with the law and the evidence as the ends of justice require; and that this is true whether the pleadings are actually amended or not. We therefore accept defendant's position that even though they had not pleaded the defense of mistake, that should not preclude them from urging and relying on that defense if that was what the interest of justice required. In pursuing that objective, the proper application of the rules is that amendments should be allowed if necessary to accomplish that objective, where a case has actually been tried on a different issue or a different theory than has been pleaded.[3]

The difficulty with the defendants' position here is that there actually was no

**2.** Defendants cite *General Insurance Company of America v. Carnicero Dynasty Corp.,* Utah, 545 P.2d 502.

**3.** *National Farmers Union Property and Casualty Co. v. Thompson,* 4 Utah 2d 7, 286 P.2d 249; see *Taylor v. E. M. Royal Corp.,* 1 Utah 2d 175, 264 P.2d 279; *Morris v. Russell,* 120 Utah 545, 236 P.2d 451, 26 A.L.R.2d 947.

change in either theory or issue. If the semantics of language is disregarded and the situation is analyzed realistically for just what it is, it will be seen that the critical and controlling issue in this case was whether the defendants Belnap were deceived or deluded as to the nature of the guaranty they signed, or whether they in fact understood that they were signing the guaranty and whether so understanding they voluntarily signed it. This is the issue to which the significant evidence related, and upon which the evidence was in dispute, and upon which the trial court believed the evidence of the plaintiff.

It is further pertinent to observe that there is no realistic view of the situation upon which the defendants could have avoided liability on the guaranty they signed because of mutual mistake of fact. Under such circumstances it would have been but an exercise in futility for the trial court to have allowed the formality of amending the pleadings to allege mistake, and then to have proceeded to find, as he did, that the defendants knew what they were signing.

On the basis of what has been said above it is our conclusion that the appellants have not borne the burden which is theirs of demonstrating that the trial court committed error or abused its discretion in rendering the judgment against them.

Affirmed. Costs to plaintiff (respondent).

MAUGHAN and STEWART, JJ., and J. ROBERT BULLOCK, District Judge, concur.

WILKINS and HALL, JJ., having disqualified themselves, do not participate herein.