**Robert L. BLACKHURST, as personal representative of the estates of Priscilla S. Blackhurst and Brigham Douglas Blackhurst, Plaintiff and Respondent,**

v.

**TRANSAMERICA INSURANCE COMPANY, a corporation, and Leila P. Shipp, an individual, Defendants and Appellants.**

No. 18907.

Supreme Court of Utah.

Feb. 22, 1985.

---

1. U.C.A., 1953, §§ 78–51–25 and –40.

2. *See* Annot., 19 A.L.R.3d 1073 (1968).

Wendall Bennett, Salt Lake City, for Shipp.

Raymond M. Berry, Robert Henderson, Salt Lake City, for defendants and appellants.

Stuart H. Schultz, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Plaintiff Robert Blackhurst brought this action as personal representative for the estates of his parents, Priscilla and Brigham Blackhurst, to enforce a settlement agreement whereby the defendant insurer had agreed to pay $150,000 to settle Mrs. Blackhurst's personal injury claim against its insured, Leila Shipp. The lower court in a summary judgment held the agreement enforceable although Mrs. Blackhurst died prior to the appointment of a general guardian and approval of the settlement by the court. We affirm.

Mrs. Blackhurst, a relatively healthy 82-year-old, was struck by a car driven by Leila Shipp on August 21, 1980. Mrs. Blackhurst suffered brain injury as a result of the accident and was rendered incompetent and unable to care for herself or her husband. Robert Blackhurst began negotiations with Rex Hess, a Transamerica agent, regarding his mother's personal injury claim in October 1980. In December 1980, he retained an attorney, Keith Nelson, to represent him. The insurer at all times knew of Mrs. Blackhurst's condition.

Throughout February and March 1981, the parties were unable to come to an agreement. On March 23, 1981, Nelson personally delivered a summons and complaint to Hess. It had not been filed with the court. The action, entitled *Brigham and Priscilla Blackhurst v. Leila Shipp*, claimed $500,000 in special damages for Mrs. Blackhurst, $1,000,000 in general damages, and $500,000 for Mr. Blackhurst. The next day, March 24, Hess and Nelson orally agreed on a settlement figure of $150,000. Nelson confirmed the agreement by letter, hand delivered that same day.

On or around Wednesday, March 25, Nelson prepared a petition for appointment of a conservator for Mrs. Blackhurst and a release in accordance with his agreement with Transamerica and submitted them to the Third District Court of Salt Lake County. The presiding probate judge requested that Nelson return on Monday, March 30, when the probate clerk would return from vacation and could handle the filing and submission of the petition.

Mrs. Blackhurst died on Sunday, March 29. The cause of her death was listed as "severe brain damage due to a remote injury seven months, possible pneumonia." Robert Blackhurst was appointed special administrator for his mother's estate on April 1. Later that same day, Nelson informed Hess that Mrs. Blackhurst had died. Nelson was thereafter told that the insurance company did not intend to pay the amount named in the settlement documents. Mr. Blackhurst died shortly thereafter.

The issue on appeal is whether the settlement agreement can be enforced by the personal representative of Mrs. Blackhurst's estate. In an appeal from a summary judgment, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the losing party. *Hall v. Warren*, Utah, 632 P.2d 848, 849 (1981).

We first address Transamerica's argument that neither Robert Blackhurst nor Keith Nelson had the authority to compromise the claims of Mrs. Blackhurst.

Specifically, Transamerica argues that only general guardians can compromise the claims of an incompetent person. We acknowledge this to be the general rule. *See Hansen v. Gossett,* Utah, 590 P.2d 1258, 1260 (1979). However, the rule requiring guardians for incompetent persons is for their protection. *Morris v. Russell,* 120 Utah 545, 553, 236 P.2d 451, 455 (1951). "Its purpose is not to burden nor hinder them in enforcing their rights; nor to confer any privilege or advantage on persons who claim adversely to them or who may be trying to take advantage of them." *Id.* In the present case, the application of the rule would not benefit the incompetent person or her estate, but rather would penalize her estate.

■ Moreover, as plaintiff argues, Transamerica is estopped to deny that Nelson had authority to enter into a binding settlement agreement with Transamerica on behalf of Mrs. Blackhurst. The elements of equitable estoppel are: "conduct by one party which leads another party, in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his conduct." *United American Life Insurance Co. v. Zions First National Bank,* Utah, 641 P.2d 158, 161 (1982) (footnote omitted).

■ In the present case, Hess, Transamerica's representative, knew that Mrs. Blackhurst was incompetent to negotiate on her own behalf, and he likewise knew that no general guardian had yet been appointed. Hess nevertheless expressed no concern about dealing with Robert Blackhurst and later Keith Nelson. No objections were raised with regard to Nelson's authority to negotiate or enter into an agreement. Hess willingly entered into a settlement agreement with Nelson on March 24 that was confirmed by the following letter from Nelson, hand delivered that same day:

> This will confirm the settlement of this case on this date for $150,000, together with the PIP benefits for the remainder of the year.

Robert Blackhurst will be appointed as guardian for Brigham and Priscilla Blackhurst, his parents. Once this appointment has been completed, we will present you with certified copies in exchange for the draft, and make arrangements for the filing of the appropriate release.

Thus, Transamerica's agent Hess contemplated all along that the appointment of Robert Blackhurst as guardian would occur at the time the court's approval of the settlement agreement was sought. To permit Transamerica to repudiate the agreement under those circumstances would deprive the Blackhursts' estates of the compensation the parties agreed would satisfy Mrs. Blackhurst's claims resulting from the automobile accident and would be patently unfair. Transamerica is therefore estopped from claiming Nelson lacked authority to negotiate as a means to avoid the settlement agreement. The Supreme Court of Wisconsin, under facts similar to those in the present case, concluded that an insurer was estopped from objecting to an attorney's authority to negotiate a settlement contract on behalf of an incompetent person where no objection was raised at any time during the negotiations. *Carey v. Dairyland Mutual Insurance Co.,* 41 Wis.2d 107, 116–18, 163 N.W.2d 200, 205–06 (1968).

■ Finally, even if Nelson's acts on Mrs. Blackhurst's behalf were unauthorized, as Transamerica now claims, they were subsequently ratified by Robert Blackhurst after he was appointed special administrator of his mother's estate. *See Bradshaw v. McBride,* Utah, 649 P.2d 74, 78 (1982). Since ratification relates back to the time when the unauthorized act was done, *id.,* the March 24 agreement between Nelson and Hess is enforceable.

■ Transamerica also claims that, assuming Nelson had authority to act on Mrs. Blackhurst's behalf, her death caused such authority to be revoked. Restatement (Second) of Agency § 120(1) (1958) is cited for the proposition that the death of the

principal terminates the authority of the agent. In our view, the agreement reached by the parties on March 24, five days prior to Mrs. Blackhurst's death, was a completed contract and as such is valid and enforceable. *See Lawrence Construction Co. v. Holmquist,* Utah, 642 P.2d 382, 384 (1982). "'An accord is an agreement between parties, one to give or perform, the other to receive or accept, such agreed payment or performance in satisfaction of a claim.'" *Id.* (quoting *Browning v. Equitable Life Assurance Society of the United States,* 94 Utah 532, 549, 72 P.2d 1060, 1068 (1937)). Therefore, whether any "agency" terminated on the death of Mrs. Blackhurst is irrelevant since the contract was completed prior to her death.

■ Nor may Transamerica be excused from performance on its theory that the settlement was "conditioned" on the appointment of a general guardian and court approval. Transamerica relies on *Polyglycoat Corp. v. Holcomb,* Utah, 591 P.2d 449 (1979), which held that a material breach by one party permits the other party to rescind a contract. *Id.* at 451. That case is inapposite here. The essential terms of the settlement contract were agreed to by Transamerica's representative. Nelson's letter confirming the settlement agreement noted that Robert Blackhurst would be appointed guardian and the release would be submitted to the court. Neither the confirmation letter nor the deposition testimony of any of the parties indicates that these contemplated occurrences were express or implied *conditions* to the $150,000 settlement agreement. We have held previously that an enforceable accord was reached by the parties. The record also supports the conclusion that it was not the settlement *agreement* that was conditioned upon appointment of a guardian and court approval. Rather, the appointment was a condition precedent to *payment* of the amount agreed on by the parties. The parties merely agreed that appointment and court approval would be undertaken before Transamerica delivered its draft for $150,000, at which time the contract would be fully performed. The equivalent of those acts occurred when Robert Blackhurst was appointed special administrator for his mother's estate and special conservator for his father and received court authorization to execute releases in favor of Transamerica.

■ Finally, Transamerica argues that it is entitled to rescind because of a mutual mistake of fact, since neither Transamerica nor Nelson knew that Mrs. Blackhurst had pneumonia, which Transamerica argues was the cause of her death. The trial court concluded "that there is no mistake as to a present or past fact of substantial nature and that there is no nullification of the agreement because of mistake." We agree. The parties were not mistaken as to Mrs. Blackhurst's brain injury resulting from the accident. There was, of course, at the time of settlement negotiations, as in every personal injury case, a conscious uncertainty regarding the medical outcome of the victim's case. At the time of settlement, both parties undertook a risk that the resolution of the uncertainty might be unfavorable. *See* Restatement (Second) of Contracts § 154(b) (1981).[1] This Court will not nullify a settlement contract because one of the parties would have acted differently if all the future outcomes had been known at the time of agreement.

We conclude that the trial court was correct in granting summary judgment to plaintiff. Judgment affirmed. Costs to plaintiff.

HALL, C.J., and HOMER F. WILKINSON, District Judge, concur.

HOWE, Justice (concurring in the result):

I concur in the result reached by the majority opinion but do so on different grounds.

---

1. Similar reasoning supports the rule that an unknown consequence of known injury does not provide relief to a party to a release, *Reynolds v. Merrill,* 23 Utah 2d 155, 156–57, 460 P.2d 323, 324 (1969). Plaintiff argues that the *Reynolds* reasoning is dispositive on this issue.

I view the offer made by Transamerica to settle the personal injury claim of Priscilla Blackhurst as an option. Transamerica promised payment of $150,000 if and when it received a legally binding release of her claim. Because Mrs. Blackhurst was incompetent, neither Robert Blackhurst nor Keith Nelson could give any return promise that he could furnish such a release since it did not lie wholly within his power, control, and authority to do so. Thus the transaction should be viewed by principles of unilateral, not bilateral, contract.

After Transamerica made its offer, Nelson set about to perform the requested act, *i.e.*, obtain the release. He prepared and presented to the district court a petition for the appointment of a guardian for Mrs. Blackhurst and for an order approving the proposed settlement. However, because the probate clerk was absent from work that day, the required appointment and approval could not be accomplished. Nonetheless, Nelson had begun the invited performance, with the result that the offer of Transamerica became a binding option contract and could not thereafter be revoked. Restatement (Second) of Contracts § 45 (1981) states:

§ 45. Option Contract Created by Part Performance or Tender

(1) Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders or begins the invited performance or tenders a beginning of it.

(2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer.

The foregoing rules were followed and applied in *Marvel v. Dannemann*, 490 F.Supp. 170 (1980); *Motel Services, Inc. v. Central Maine Power Co.*, Me., 394 A.2d 786 (1978); *Coffman Industries, Inc. v. Gorman-Taber Co.*, Mo.App., 521 S.W.2d 763 (1975); *Sylvestre v. State*, 298 Minn. 142, 214 N.W.2d 658 (1973); *Weather-Gard Industries, Inc. v. Fairfield Savings and Loan Association*, 110 Ill.App.2d 13, 248 N.E.2d 794 (1969); *Marchiondo v. Scheck*, 78 N.M. 440, 432 P.2d 405 (1967). *Coffman Industries, Inc. v. Gorman-Taber Co., supra*, like the instant case, dealt with the acceptance of an offer of settlement. There, an attorney for the bonding company of a general contractor transmitted an offer to pay a subcontractor's claim if the latter would resolve a collateral claim made by one of his suppliers. The court held that the beginning of negotiations by the subcontractor to resolve the collateral claim and his forebearing to sue the contractor were sufficient to create an option contract which rendered the offer irrevocable. The court relied upon the principle of law enunciated in 1 A.L. Corbin, Corbin on Contracts § 49 (1963):

Where one party makes a promissory offer in such form that it can be accepted by the rendition of the performance that is requested in exchange, without any express return promise or notice of acceptance in words, the offeror is bound by a contract just as soon as the offeree has rendered a substantial part of that requested performance.

Section 45 of the Restatement of Contracts was also cited by the court in support of its holding.

The death of Mrs. Blackhurst did not terminate the offer or give Transamerica grounds for revoking the offer. Restatement (Second) of Contracts § 48 (1981) states the general rule that an offeree's power of acceptance is terminated when the offeree or offeror dies but notes that this rule does not affect option contracts unless the death discharges the contractual duty of the offeror because of failure of consideration, frustration, impossibility, or failure of condition. 1 A.L. Corbin, Corbin on Contracts § 54 (1963) is in accord, stating that if an offer was a binding option contract or has become so by the offeree's action before his death, and if the contract is not one that has become impossible of performance by reason of the death, the offeree's personal representatives can ac-

cept the offer and consummate a contract. Therefore, the death of Mrs. Blackhurst did not rob her estate of the right to complete the invited performance and did not justify Transamerica's attempted revocation. Neither Mrs. Blackhurst's personal involvement nor services were necessary to the performance of the contract.

Transamerica received everything that it had bargained for, *viz.*, a full and complete release of all claims of Mr. and Mrs. Blackhurst for her personal injury. It is true, as contended for by Transamerica, that Nelson contemplated that the settlement would have to be approved by the district court in a guardianship proceeding for Mrs. Blackhurst and that the release would be signed by her legal guardian. That was the proper procedure when she was alive. However, it is clear that what Transamerica was bargaining for was a legally binding release of her personal injury claim, and the exact legal procedure by which that release would be obtained was not a material term of the settlement. The protection afforded to Transamerica by the release which was actually given is not diminished by the fact that it was executed by the personal representative of Mrs. Blackhurst's estate rather than by her guardian. No claim is advanced by Transamerica that enforcement of the settlement will leave it exposed to further liability for Mrs. Blackhurst's personal injuries.

Contrary to Transamerica's contention, there was no mutual mistake of fact which would provide legal grounds for rescission of the option contract. Rex Hess, Transamerica's agent, Robert Blackhurst, and Nelson knew of the precarious condition of Mrs. Blackhurst and that she could die any time or live for several years.

STEWART, Justice (dissenting):

I dissent. It is uncontested that attorney Keith Nelson had no authority to act for Mrs. Blackhurst. She was incompetent and could not, therefore, enter into a contract herself. Since neither Mr. Nelson nor anyone else was ever appointed guardian for her, a contract between her and anyone else was void. While I have no doubt that Mr. Nelson acted out of legitimate motivations in looking after Mrs. Blackhurst's interests, Mr. Nelson was not, and could not be, her agent or attorney in settling her claim. Therefore, the agreement that Mr. Nelson negotiated with Transamerica was a complete nullity in the eyes of the law. Indeed, Mr. Nelson knew he lacked authority and represented to Transamerica that the settlement documents would be executed by a person who had authority to sign for Mrs. Blackhurst.

Not content with simply one rationale for its conclusion, the majority advances three reasons to support its result: (1) the settlement agreement is a valid contract because the reasons for requiring the appointment of a guardian were satisfied even though not complied with; (2) Transamerica is estopped to deny that Mr. Nelson had authority to settle; and (3) even if Mr. Nelson had no authority initially, his acts were subsequently ratified by Mrs. Blackhurst's estate. Since any one of the three, if valid, should be satisfactory, it appears that even the majority detects some flaw in each.

The majority states that the rule requiring appointment of a guardian was not designed to burden or hinder an incompetent from enforcing his rights or to confer an advantage on one who tries to take advantage of an incompetent. However, the majority also recognizes the general rule that only a general guardian can compromise the claims of an incompetent, but argues that in this case, application of that rule "would not benefit the incompetent person or her estate, but rather would penalize her estate." In truth, application of the rule does not penalize the estate.

It is fundamental law that Mrs. Blackhurst could not contract because she was incompetent. It is equally fundamental that Mr. Nelson could not contract for her because he had no authority to do so. Indeed, both orally and in its letter to Mr. Nelson accompanying the settlement agreement, Transamerica expressly conditioned the settlement agreement upon the appointment of a general guardian. Mr. Nelson

knew that the agreement was contingent. The majority's statement that "[n]o objections were raised with regard to Nelson's authority to negotiate or enter into an agreement" is plainly wrong. Transamerica's insistence upon the appointment of a guardian was founded on the elementary proposition, accepted by everyone in the case, that Mr. Nelson had no authority to act for Mrs. Blackhurst. Transamerica knew it could not settle with Mr. Nelson as an individual. Indeed, had Transamerica been so heedless of basic law, it could have been compelled to pay a second time to a duly authorized guardian. Furthermore, it was Mr. Nelson's responsibility to obtain the necessary judicially authorized authority. It was not the duty of Transamerica to object to his lack of authority. The majority's position that there was in fact a contract with Transamerica simply turns the law of contracts on its head.

To hold that Mr. Nelson entered into a contract binding on Mrs. Blackhurst or her guardian is fraught with far-reaching consequences. If the agreement between Nelson and Transamerica is valid in the instant case, then it would have to be binding no matter how improvident the terms of the contract. The law governing guardians and the contractual capacity of incompetent persons is designed to protect the incompetent. But how can an incompetent be protected if he can be bound by contracts made by interlopers who are not appointed by a court? I have no doubt that Mr. Nelson sought to protect Mrs. Blackhurst's interest with zeal and sound judgment in this particular case. But what if someone else had settled Mrs. Blackhurst's claim for one-half or one-tenth the amount? How and by whom would the incompetent's interests then be protected?

Furthermore, the majority fails to distinguish between two different jural entities —Mrs. Blackhurst and her estate. A personal representative appointed to probate an estate has different duties and represents different interests than a guardian of an incompetent. Each has a different legal status, and each has different legal authority and power. It is quite true that the law requiring the appointment of a guardian should not be employed unfairly against an incompetent. *Morris v. Russell,* 120 Utah 545, 236 P.2d 451 (1951), stands for that general statement as the majority points out, but that case is far different on its facts and hardly justifies overriding the clear intent of Transamerica and Mr. Nelson that a guardian should be appointed.[1]

The majority's estoppel argument is also devoid of merit. The plain fact is that Mr. Nelson, either as the putative guardian or as the representative of the estate, did not change his position because of any reliance on Transamerica's representations. On the contrary, it was Transamerica that relied on Mr. Nelson's obligation to obtain the requisite authority. That was an express condition of the compromise agreement.

The majority suggests that it would be "patently unfair" to hold in favor of Transamerica because Mrs. Blackhurst's estate would be penalized if Transamerica were not held liable. The majority does not explain how that can possibly be; the facts indicate quite the opposite. The settlement was to provide Mrs. Blackhurst sufficient money to take care of her needs until she died. Before Mr. Nelson accepted the settlement offer of $150,000, he proposed a settlement of $182,000 based on a yearly maintenance figure of $26,000 per year, assuming that Mrs. Blackhurst would live for seven years. Other settlement figures that Mr. Nelson proposed assumed a life expectancy of as long as eleven years. Obviously the damage calculations were intended to support Mrs. Blackhurst while

---

1. In *Morris v. Russell,* the plaintiff himself was the incompetent who brought a contract action for the value of services rendered. There, strict application of the rule would have indeed hindered the plaintiff from enforcing his right. In the instant case, the incompetent is not the plaintiff. She is deceased. Thus, *Morris* has no application here. Indeed, the law, as applied, swallows the rule requiring the appointment of guardians and would allow an unauthorized person to compromise a claim against an incompetent even if it is prejudicial to the incompetent.

she lived and not benefit her heirs. To give the estate the damages intended for Mrs. Blackhurst's living and medical expenses, as well as her general damages, is not required by any notion of fairness with which I am familiar. The estate may well have had a wrongful death action for Mrs. Blackhurst's death, but that is an entirely different cause of action based on an entirely different measure of damages. The short of it is that the majority's position that it would be "patently unfair" if Transamerica were not held liable because the estate would be penalized is, I submit, plainly in error. Enforcement of the agreement in this case simply results in a windfall to the heirs of Mrs. Blackhurst.

I would reverse.

ZIMMERMAN, J., does not participate herein.