IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CITY OF CHANDLER, *Plaintiff/Appellee*,

*v.*

ROOSEVELT WATER CONSERVATION DISTRICT, *Defendant/Appellant*.

No. 1 CA-CV 23-0744

FILED 10-31-2024

Appeal from the Superior Court in Maricopa County
No.  CV2022-011983
The Honorable Joan M. Sinclair, Judge

**REVERSED AND REMANDED**

COUNSEL

Fennemore Craig PC, Phoenix
By Sean T. Hood, Taylor N. Burgoon
*Counsel for Plaintiff/Appellee*

Snell & Wilmer L.L.P., Phoenix
By Robert A. Henry, Amanda Z. Weaver
*Counsel for Defendant/Appellant*

―――――――――――――――

**OPINION**

Presiding Judge Michael S. Catlett delivered the opinion of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

―――――――――――――――

**C A T L E T T**, Judge:

¶1        Arizona has a one-year limitations period for "[a]ll actions against any public entity or public employee[.]" A.R.S. § 12-821. This appeal requires us to resolve two questions. First, whether "all actions" in § 12-821 includes an action by one public entity against another. And, if so, whether the City of Chandler ("Chandler") filed its action within the one-year limitations period. We conclude the one-year limitations period in § 12-821 applies to an action by one public entity against another and Chandler's claims are time barred.

**FACTS AND PROCEDURAL HISTORY**

¶2        Chandler is an Arizona municipal corporation. The Roosevelt Water Conservation District ("Water District") is an Arizona irrigation and water district operating as a political subdivision of the state. Ariz. Const. art. 13 § 7; A.R.S. § 48-2901 *et seq.* The Water District's primary purpose is to deliver irrigation water to land within a designated area; some of that land is in Chandler.

¶3        In February 2002, Chandler and the Water District entered into a Domestic Water Service Agreement ("Agreement"). The Agreement requires the Water District to deliver to Chandler some amount of available water from the Salt and Verde Rivers. Whether the Water District is required to do so, and in what amount, depends on how much water the Salt River Project makes available. Under the Agreement, Chandler is obligated to pay the Water District charges for water delivered and assessments for urbanized land located within the Water District.

¶4        Either party may terminate the Agreement under certain circumstances. The Water District may do so only if Chandler fails to make a required payment after 30-days written notice. Unless terminated sooner, the Agreement is effective until December 31, 2086.

¶5 The Water District has not sold water to Chandler since 2015. From 2016 to 2018, the Water District lacked sufficient water to sell, and in 2021, Chandler did not order any. But, in 2018, things soured between the parties, leading to this litigation.

¶6 On April 26, 2018, the Water District notified Chandler that it believed the Agreement had ended and that the Water District was formally terminating the agreement effective May 26, 2018. On May 25, 2018, Chandler acknowledged the notice but disagreed that the Agreement had ended or that the Water District could terminate it. Chandler informed the Water District that it would "consider any termination of this Agreement by [the Water District] a breach of the Agreement and will pursue all available remedies." Chandler also "believe[d] that [the Water District's] announced and unjustified 'termination' of this Agreement on May 26, 2018 constitutes anticipatory breach of the Agreement." On June 5, 2018, the Water District again wrote to Chandler reiterating its position that the Agreement had ended.

¶7 Over a year later, on October 3, 2019, Chandler notified the Water District of Chandler's "intent to order water for delivery in 2020 pursuant to the terms of the [Agreement.]" Chandler asked the Water District to provide volume, cost, and delivery information. Within a week, the Water District reiterated its view that the Agreement "has been terminated." A similar situation played out in 2020, and again in 2022. In September 2020, Chandler notified the Water District that it intended to order water for delivery in 2021; the Water District responded that the Agreement had been terminated. In August 2022, Chandler requested a meeting, "so that the parties [could] determine the estimated amount of water available for delivery and Chandler's proportionate share and develop a preliminary monthly water delivery schedule." The Water District responded that the Agreement ended many years ago, and therefore it would not schedule a meeting or deliver water. Chandler made one last try—in September 2022, Chandler sent a demand letter, notifying the Water District that it had breached the Agreement and demanding the Water District cure the breach.

¶8 After the Water District took no action in response to that demand, Chandler sued. Chandler brought three claims—breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. Chandler sought specific performance requiring the Water District to comply with the Agreement. Chandler also sought a declaratory judgment that (1) the Agreement remained valid and (2) the

Water District had committed a material breach. Chandler did not seek money damages.

¶9          Within about two months, both parties moved for summary judgment. The Water District argued Chandler's claims were time-barred under § 12-821. Chandler argued its claims were not subject to any statute of limitations or, alternatively, any applicable limitations period had not expired, the Agreement remained valid and binding, and the Water District committed a material breach by refusing to deliver water in 2023 or beyond.

¶10          The superior court denied summary judgment for the Water District and granted it for Chandler. The court concluded Chandler's claims are subject to the one-year limitations period in § 12-821, but those claims were timely because "each failure to deliver water in accordance with the terms of the Agreement constituted a fresh breach[.]" The court then concluded the Agreement is valid and binding and the Water District had breached the Agreement; the court rejected the Water District's affirmative defenses as a matter of law. The court entered final judgment for Chandler, ordering the Water District to supply Chandler with water "pursuant to the terms of the Agreement."

¶11          The Water District timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶12          The Water District challenges the grant of summary judgment for Chandler; it asks that we, instead, grant it summary judgment. We review *de novo* the entry of summary judgment, viewing the facts in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). When the parties file cross motions for summary judgment in the superior court, we may reverse and order summary judgment for the party appealing the judgment. *Aaron v. Fromkin*, 196 Ariz. 224, 227 ¶ 10 (App. 2000).

¶13          The Water District argues we should do so here because Chandler's claims are subject to the one-year limitations period in § 12-821, and those claims accrued more than one year before September 12, 2022—the date Chandler filed this action. Chandler responds that the limitations period in § 12-821 does not apply because it is a public entity. Chandler also argues that, even if it is subject to § 12-821, it timely filed this action.

4

## I.

**¶14** Section 12-821 provides that, "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." Although the phrase "all actions" appears to cover this action, there is a potential impediment. The common law doctrine of *nullum tempus occurrit regi* (meaning time does not run against the king) ("*nullum tempus* doctrine") often exempts public entities from statutes of limitations.

### A.

**¶15** We interpret statutes "according to the plain meaning of the words in their broader statutory context," unless directed to do otherwise. *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023).

**¶16** On its face, § 12-821 applies to Chandler's claims. As a political subdivision, the Water District is a "public entity" as that phrase is defined and used in § 12-821; Chandler does not argue otherwise. *See* Ariz. Const. art. 13 § 7; A.R.S. § 12-820(7) ("'Public entity' includes this state and any political subdivision of this state."); *see also Flood Control Dist. of Maricopa Cty. v. Gaines*, 202 Ariz. 248, 250 ¶ 3, 254 ¶ 19 (App. 2002) (applying § 12-821 to an action against "a political subdivision responsible for developing and managing flood control projects to ensure public safety"). Moreover, Chandler's action, which includes breach of contract and declaratory judgment claims, falls within the broad scope of "all actions" in § 12-821. *See Standard Constr. Co. v. State*, 249 Ariz. 559, 562 ¶ 6 (App. 2020) ("A plaintiff's breach of contract claim against a public entity is barred absent compliance with . . . § 12-821[.]"); *Rogers v. Bd. of Regents*, 233 Ariz. 262, 267 ¶ 17 (App. 2013) ("This court has held . . . that A.R.S. § 12–821 extends to claims for declaratory relief."). Thus, if Chandler were a private party, the applicable limitations period would be one year.

### B.

**¶17** But there is a wrinkle—Chandler is a public entity, not a private party. Chandler asserts that status triggers the *nullum tempus* doctrine and exempts it from § 12-821. The Water District responds that the *nullum tempus* doctrine does not apply because § 12-821 overrides that doctrine. We agree with the Water District.

**1.**

¶18        "Arizona case law has consistently recognized the" *nullum tempus* doctrine. *City of Phoenix v. Glenayre Elect., Inc.*, 242 Ariz. 139, 142 ¶ 10 (2017). In Arizona, the doctrine has been codified since before statehood and it "has been re-enacted by our Legislature every time it has recodified the law." *See* Rev. Stat. Ariz. Territory § 44–2306 (Sec. 10) (1887); *City of Bisbee v. Cochise County (Bisbee III)*, 52 Ariz. 1, 9 (1938). The doctrine is currently codified, at least in part, in A.R.S. § 12-510, which provides that "[e]xcept as provided in § 12-529, the state shall not be barred by the limitations of actions prescribed in [Title 12, Chapter 5]."

¶19        Under the *nullum tempus* doctrine, "statutes of limitations which govern between private individuals do not apply in proceedings on behalf of the state." *Bisbee III*, 52 Ariz. at 9. The doctrine generally applies to municipalities. *Id.* at 18; *see also Glenayre Elect., Inc.*, 242 Ariz. at 142–43 ¶ 11. The doctrine is premised on the notion that "[t]he officers who are charged with the active duty of enforcing [the] rights [of the state] have no personal profit to gain thereby, and therefore no inducement for the bringing of false and unwarranted actions[.]" *Bisbee III*, 52 Ariz. at 9.

¶20        The *nullum tempus* doctrine is not absolute. While the common law generally applies in Arizona, it gives way when it is "repugnant to or inconsistent with the . . . laws of this state." A.R.S. § 1-201. The *nullum tempus* doctrine is no exception—the doctrine does not apply when the legislature clearly applies a statute of limitations to claims by the state or its political subdivisions. *Bisbee III*, 52 Ariz. at 10; *Glenayre Elect.*, 242 Ariz. at 143–44 ¶¶ 14–15.

¶21        How do we know when a statute overrides the *nullum tempus* doctrine? We start with the statute's text. *See Glenayre Elect., Inc.*, 242 Ariz. at 144 ¶ 16. A statute need not contain magic words for the doctrine to disappear. *See id.* ¶ 18. The legislature also need not insert an exception in § 12-510 or "expressly declare[] in [a statute of limitations] that the state and its political subdivisions are subject to its provisions." *Id.* at 143–44 ¶¶ 15–16. Instead, the text need only "make[] clear that the statute of [limitations] controls over other, potentially conflicting state laws." *Id.* at 144 ¶ 16.

¶22        In *Glenayre Electronics*, our supreme court held that a statute of repose applied to a municipality when the text said it applied "notwithstanding any other statute." *See id.* at 144 ¶¶ 16–18. The court concluded the statute applied because "the word 'any' is 'broadly inclusive,'" and thus the limitation on the application of other laws

"applie[d] broadly and inclusively to all other statutes." *Id.* at 144 ¶¶ 17–18. So, when statutory language applies broadly and inclusively to the exclusion of other statutes, that strongly indicates the legislature intends to override the *nullum tempus* doctrine.

¶23 Statutory history can also help. Courts presume the legislature knows the law, including the *nullum tempus* doctrine and § 12-510. *Id.* at 144 ¶ 19. When the legislature enacts a statute of limitations containing all-encompassing language and locates it outside Title 12, Chapter 5, that may indicate legislative intent to override the *nullum tempus* doctrine. *See id.* Beyond that, other statutory history and purpose can shed light on whether a statute sweeps in all claims, including those by public entities. *See id.* at ¶¶ 19–20.

**2.**

¶24 Applying the foregoing principles, we conclude Chandler's action is subject to the limitations period in § 12-821. Starting with the text, § 12-821 makes clear that it applies to Chandler's claims. The text unambiguously says the one-year limitations period applies to "[a]ll actions against any public entity[.]" A.R.S. § 12-821. "The word 'all,' one of the most comprehensive words in the English language, means exactly that." *State v. Jones*, 246 Ariz. 452, 455 ¶ 9 (2019). "Standing by itself the word means all and nothing less than all." *Estate of Tovrea v. Nolan*, 173 Ariz. 568, 572 (App. 1992); *Cao v. PFP Dorsey Invs., LLC*, 257 Ariz. 82, __ ¶ 28 (2024) ("'All' means all—not less than all."). Thus, § 12-821's text applies the limitations period therein to all actions—not less than all actions. And "all actions" includes an action brought by a public entity. By using "one of the most comprehensive words in the English language," *Jones*, 246 Ariz. at 455, the legislature textually indicated the limitations period in § 12-821 is exempt from the *nullum tempus* doctrine, *Bisbee III*, 52 Ariz. at 10; *see also Glenayre Elect., Inc.*, 242 Ariz. at 144 ¶ 16.

¶25 The broad and inclusive nature of § 12-821 becomes more apparent when compared with how other statutes of limitations are structured. For example, A.R.S. § 12-531 provides that "[a] person who has a cause of action for damages against a real estate appraiser . . . shall commence the action before the earlier of" two dates. Similarly, the statute of limitations to enforce an oral debt says that "[t]here shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions" and then lists an action for oral debt as one such action. A.R.S. § 12-543. But § 12-821 is structured differently. The legislature did not say, for example, that "a person must bring a claim

against a public entity within one year after accrual" or "there shall be commenced within one year the following actions: an action against a public entity." Instead, the legislature said "[a]ll actions against any public entity or public employee shall be brought within one year after" accrual. A.R.S. § 12-821. By choosing that structure, the legislature signaled that the limitations period applies to actions of all shapes and sizes.

¶26        Statutory history also supports our conclusion. When first enacted in 1993, § 12-821 applied only to "[a]ll *personal injury actions* against any public entity or public employee." 1993 Ariz. Sess. Laws ch. 90, § 8 (1st Reg. Sess.) (S.B. 1055) (emphasis added). Public entities do not bring personal injury actions, so § 12-821 as originally written would not have affected public entity plaintiffs. Within a year, however, the legislature removed the "personal injury" language, instead applying § 12-821 to "all actions." 1994 Ariz. Sess. Laws ch. 162, § 1 (2nd Reg. Sess.) (S.B. 1284). So § 12-821's broad scope is no happenstance—having tried a narrower scope for a short period of time, the legislature switched gears and made § 12-821 applicable to "all actions."

¶27        That the legislature codified § 12-821 outside Title 12, Chapter 5 is also telling. As explained, the legislature endorsed the *nullum tempus* doctrine in § 12-510. But that statute says only that the limitations periods in Title 12, Chapter 5 do not apply to the state. The legislature did not place § 12-821 in Title 12, Chapter 5, instead locating it in Title 12, Chapter 7 (and there it remains). *See* 1993 Ariz. Sess. Laws ch. 90, § 8. One might think no thought went into that choice, but doing so would be mistaken. In the bill creating § 12-821, the legislature also created A.R.S. § 12-550, which contains a catch-all, four-year limitations period. 1993 Ariz. Sess. Laws ch. 90, § 2. Not only does § 12-550 not use language like § 12-821—again reinforcing that § 12-821's broad application is no mistake—but the legislature located § 12-550 in Title 12, Chapter 5. When the legislature simultaneously creates two statutes of limitations and locates one where § 12-510 applies and one where it does not, it is hard to chalk that up to fortuity and not choice.

¶28        Other legislative activity confirms § 12-821 applies to actions by public entities. Under A.R.S. § 35-212(B)(2), the attorney general may bring an action for the state against a "public body or the public officer acting in the officer's official capacity who ordered or caused [an] illegal payment" of public monies. Such an action will ordinarily involve one public entity (the state) against another (a public body) or a public employee (a public officer). The public monies statute makes clear that "an action brought pursuant to this article is subject to title 12, chapter 7, article

2," which includes § 12-821. A.R.S. § 35-212(E). It would have been odd for the legislature to apply § 12-821 to actions by the state against public entities to recover illegally paid public monies only for the *nullum tempus* doctrine to then exempt the state from § 12-821.

¶29 What is more, the legislature later amended § 35-212(E) to clarify that a public monies action by the attorney general "must be brought within five years after the date an illegal payment was ordered and § 12-821.01 does not apply to the action." 2018 Ariz. Sess. Laws ch. 253, § 3 (2nd Reg. Sess.) (S.B. 1274). Our supreme court confirmed that amendment "supplant[ed] the one-year limitations period in § 12-821 with a five-year limitations period[.]" *State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 12 ¶ 23 (2022). Through that amendment, "the legislature aimed to provide sufficient time for the Attorney General to investigate and recover illegally paid public funds and to shield the Attorney General's enforcement authority from collateral litigation about the accrual date." *Id.* at 13 ¶ 28. But if Chandler is correct that the *nullum tempus* doctrine exempts public entities from § 12-821, there would have been no need for the legislature to amend § 35-212(E) to give more time. The attorney general already would have had infinite time to investigate without having to worry about the accrual date. Our conclusion that § 12-821 displaces the *nullum tempus* doctrine gives meaning to the second sentence in § 35-212(E); Chandler's position does not. *Cf. Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019); *see also Glenayre Elect., Inc.*, 242 Ariz. at 145 ¶ 21 ("If, as the City asserts, § 12–552 neither applied to governmental entities . . . nor otherwise trumped § 12–510, the legislature . . . would not have needed to add subsection (G)[.]").

¶30 Given the purpose of § 12-821, it is hardly surprising that the legislature would override the *nullum tempus* doctrine. "The Arizona Constitution expressly assigns to the legislature the role of setting the parameters of state sovereign immunity." *Redgrave v. Ducey*, 251 Ariz. 451, 454 ¶ 11 (2021). Section 12-821 is one among a series of statutes "direct[ing] by law the manner in which suits may be brought against the state" and "defin[ing] those instances in which public entities and employees are entitled to immunity." *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 203 ¶¶ 24–25 (2001). In enacting § 12-821, the legislature exercised its authority to limit the timeframe for all actions against public entities to one year after accrual. There is no support in the statutory text or history for the notion that the legislature, at the same time, kept the common law *nullum tempus* doctrine in place, thereby allowing an open-ended limitations period for public entity actions and creating an infinite waiver of sovereign immunity. The better view is that the legislature put "all actions" on equal footing when it

comes to the timeframe within which sovereign immunity is waived and a valid claim can be brought.

¶31 In arguing its claims are exempt from § 12-821, Chandler relies principally on this court's opinion in *Trimble v. American Savings Life Insurance Company*, which involved an enforcement action by the state for securities fraud. 152 Ariz. 548, 551 (App. 1986). The statute at issue, A.R.S. § 44-2004(B), provided that "[n]o civil action shall be brought under this article to enforce any liability founded upon the violation of article 13 unless brought" within one year of accrual. *Id.* at 554. This court concluded the *nullum tempus* doctrine exempted the state from the limitations period because the underlying action was one benefitting the public and the statute did not "expressly declare[]" that it ran against the state. *Id.* at 555–56.

¶32 Without questioning the result in *Trimble*, we do not think this court's analysis in that opinion is consistent with our supreme court's later analysis in *Glenayre Electronics*. *Trimble* focused on "the legislative intent of insurance rehabilitation statutes" and the fact those statutes "benefit the public generally." *Id.* at 555. But the same could be said about the indemnification claims the city brought in *Glenayre Electronics*. And yet our supreme court concluded the *nullum tempus* doctrine did not save those claims. *See Glenayre Elect., Inc.*, 242 Ariz. at 144–45 ¶¶ 16–21. In so doing, the court focused on the text and history of the statute at issue, not on whether legislative intent demonstrated public benefit. *See id.* To this, add that *Trimble* said an action brought for the public benefit is subject to the *nullum tempus* doctrine "[u]nless the legislature expressly declares that a statute of limitations bars" the action. 152 Ariz. at 556. *Glenayre Electronics* clarified that the legislature need not "expressly declare[] in [a statute of limitations] that the state and its political subdivisions are subject to its provisions." *Id.* at 143–44 ¶ 15. *Trimble*'s analysis is inconsistent with that in *Glenayre Electronics*, so it has limited utility.

¶33 In sum, the *nullum tempus* doctrine does not apply to § 12-821, and thus Chandler was required to bring its claims within one year of accrual. In so concluding, we do not suggest that every statute of limitations using the phrase "all actions" overrides the *nullum tempus* doctrine. We conclude only that the text, history, and purpose of § 12-821 overrides the *nullum tempus* doctrine.

**II.**

¶34 Having identified the applicable limitations period, we next determine whether Chandler timely filed its claims. That issue turns on

*when* Chandler's claims accrued. Chandler brought its claims on September 12, 2022. If those claims accrued before September 12, 2021 (one year before the filing date), they are barred, and if they accrued after September 12, 2021, they survive. *See* A.R.S. § 12-821.

¶35     "We review de novo questions of law concerning the statute of limitations, including 'when a particular cause of action accrues,' where, as here, such a determination 'hinges solely on a question of law rather than resolution of disputed facts.'" *Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 265 ¶ 6 (App. 2013). The Water District argues Chandler's claims accrued no later than 2018. Chandler answers that its claims accrued no earlier than August 2022. We conclude Chandler's claims accrued no later than January 1, 2021, and they are therefore time barred.

**A.**

¶36     A claim accrues under § 12-821 "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B); *see Ariz. Bd. of Regents*, 253 Ariz. at 13 ¶ 28. Under § 12–821, "[a] plaintiff need not know *all* the facts underlying a cause of action to trigger accrual." *Thompson v. Pima County*, 226 Ariz. 42, 46 ¶ 12 (App. 2010) (quoting *Doe v. Roe*, 191 Ariz. 313, 323 ¶ 32 (1998)). "But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify a wrong occurred and caused injury." *Id.* Here, there is no dispute about the source of Chandler's alleged injury (the Water District); the only dispute is when Chandler suffered injury sufficient to trigger the statute of limitations.

**B.**

¶37     The Water District argues Chandler's claims accrued no later than May 25, 2018. Recall that on April 26, 2018, the Water District sent Chandler a letter terminating the Agreement effective May 26, 2018. On May 25, 2018, Chandler responded by disagreeing that the Water District could terminate. The Water District theorizes that because Chandler could have brought a declaratory judgment action at that time, Chandler's claims accrued then. But that is wrong.

¶38     The Uniform Declaratory Judgments Act ("UDJA") says, "Any person interested under . . . a written contract" may bring an action to determine the validity of the contract. A.R.S. § 12-1832. Though the Water District is correct that, as of May 25, 2018, Chandler could have

brought a declaratory judgment action to determine the Agreement's validity, the ability to do so does not dictate the accrual date.

¶39      There is a distinction "between the point in time when a justiciable controversy arises which permits the filing of a declaratory relief action, and when an action accrues for purposes of a period of limitations[.]" *W. Cas. & Sur. Co. v. Evans*, 130 Ariz. 333, 336 (App. 1981). "When a justiciable controversy exists, [the UDJA] allows adjudication of rights before the occurrence of a breach or injury necessary to sustain a coercive action (one seeking damages or injunctive relief)." *Canyon Del Rio Invs., L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 341 ¶ 18 (App. 2011). Thus, the ability to seek declaratory relief does not automatically trigger the statute of limitations. *Id.* ¶ 19. "Instead, for an action to accrue for limitation purposes, some event in the nature of a breach of contract must occur." *Id.* (cleaned up). So, to determine the accrual date here, we must determine when "some event in the nature of a breach" occurred. *Id.*

## C.

¶40      After Chandler responded to the Water District's May 2018 termination letter, neither party sought performance for about eighteen months. Then, in October 2019, Chandler sought performance by notifying the Water District of its "intent to order water for delivery in 2020 pursuant to the terms of the [Agreement.]" Within a week, the Water District reiterated its view that the Agreement "has been terminated," thereby refusing to perform. We conclude that even if the Water District's 2018 termination letter was insufficient to start the statute of limitations, that letter combined with the Water District's failure to perform was sufficient to start the clock no later than January 1, 2021.

## 1.

¶41      A breach of contract claim requires: (1) the existence of a contract; (2) breach; and (3) resulting damages. *First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 353 ¶ 22 (2016). The Agreement here was executory—its terms imposed certain future duties on both parties. A party to an executory contract can violate a counterparty's contractual rights in two ways. First, a party can completely renege on the contract, and second, a party can fail to perform contractual duties when required. *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 277 (App. 1983).

## a.

¶42      The failure to perform a contractual duty, without legal

excuse, is a breach. *Snow v. W. Sav. & Loan Ass'n*, 152 Ariz. 27, 32 (Ariz. 1986); *see also* Restatement (Second) Contracts ("Restatement") § 235(2) (Am. L. Inst. 1981). "Ordinarily the victim of a minor or partial breach" is entitled only to "damages for whatever loss the minor breach has caused him[.]" *Zancanaro v. Cross*, 85 Ariz. 394, 400 (1959).

¶43    Anticipatory repudiation is a different species of breach occurring when a party disavows a contractual duty before the time for performance. *Esplendido Apartments v. Olsson*, 144 Ariz. 355, 360 (App. 1984); *United Cal. Bank*, 140 Ariz. at 277. Anticipatory repudiation requires "a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance when the time fixed for it in the contract arrives." *Diamos v. Hirsch*, 91 Ariz. 304, 307 (1962). Repudiating a contract before the time for performance gives rise to a claim for damages for total breach and excuses the innocent party from performance. *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 95 ¶ 9 (2013).

¶44    When repudiation occurs, the innocent party has a choice. The innocent party "may continue to treat the contract as operable and urge performance by the repudiating party without waiving any right to sue for that repudiation." *United Cal. Bank*, 140 Ariz. at 281. If the innocent party chooses that option, the repudiating party may retract the repudiation before any change of position by the innocent party and doing so "nullifies the effect of the anticipatory repudiation." *Id.* (quoting 1 Arthur L. Corbin, *On Contracts* § 981, at 968 (1952)). Or, instead of treating the contract as operable and urging performance, the innocent party can treat repudiation as final and "bring suit for the breach at any time before the other party retracts his repudiation." *Kammert Brothers Enterprises, Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 306-07 (1967); *see also* Restatement § 256 cmt. c.

¶45    When repudiation is accompanied by non-performance, the innocent party also has a claim for damages for that breach. Restatement § 243(2). When the non-performance accompanying repudiation is a *material* breach unto itself (*i.e.*, the breach would be material even in the absence of repudiation), the innocent party is relieved from further performance and entitled to damages for total breach. *Murphy Farrell Dev. LLLP v. Sourant*, 229 Ariz. 124, 133 ¶ 33 (App. 2012); *see also* Restatement § 243 cmt. b. In that situation, the innocent party has two grounds upon which to pursue damages for total breach—repudiation and material non-performance—but it "cannot avoid the consequence . . . of having a claim for damages for total breach[.]" Restatement § 243 cmt. b.

**b.**

¶46        Because anticipatory repudiation is not a breach of contract until the innocent party treats it as final, repudiation does not automatically start the statute of limitations.  Instead, accrual depends on whether the innocent party treats repudiation as final.  *Franconia Assoc. v. United States*, 536 U.S. 129, 144 (2002) (quoting 1 Calvin W. Corman, *Limitation of Actions* ("Corman") § 7.2.1 at 488 (1991)).  If the innocent party elects to treat repudiation before non-performance as final, the accrual date for breach of contract "is accelerated from the time of performance to the date of such election."  *Id.* (quoting Corman at 488–89).  If the innocent party instead chooses to treat the contract as operable and await performance, during which time the breaching party can retract the repudiation, the statute of limitations runs "from the time fixed for performance rather than from the earlier date of repudiation."  *Id.* (quoting Corman at 488); *see also Kinsey v. United States*, 852 F.2d 556, 558 (Fed. Cir. 1988) ("[T]he statute of limitations begins to run from the date of performance specified in the contract unless the obligee elects to sue earlier for anticipatory breach."); Arthur L. Corbin, *supra*, § 989, at 975; Restatement (First) of Contracts § 322 (Am. L. Inst. 1932).

**2.**

¶47        Here, the Water District anticipatorily repudiated the Agreement by claiming to terminate it and then later materially breached the Agreement by refusing to perform when requested.  Although the Water District's repudiation did not automatically trigger accrual, its later material breach for non-performance did.

¶48        Again, in April 2018, the Water District notified Chandler that it was terminating the Agreement.  The parties do not dispute the Water District had no right to do so under the Agreement.  At that point, the Water District had unequivocally indicated it would "not render the promised performance when the time fixed for it in the contract arrive[d]," resulting in repudiation.  *Diamos v. Hirsch*, 91 Ariz. 304, 307 (1962).

¶49        Chandler then had a choice of whether to treat the repudiation as final and the Agreement as breached or treat the Agreement as operable and urge performance.  *United Cal. Bank*, 140 Ariz. at 281.  Chandler appears to have treated the repudiation as final.  In response to the Water District's termination letter, Chandler wrote that it "believe[d] that [the Water District's] announced and unjustified 'termination' of this Agreement on May 26, 2018 constitutes anticipatory breach of the Agreement."  Chandler further informed the Water District that it would

"consider any termination of this Agreement by [the Water District] a breach of the Agreement and will pursue all available remedies." If Chandler's response was an election to treat the Water District's repudiation as final, the statute of limitations began running in May 2018. *See Franconia Assoc.*, 536 U.S. at 144. But we need not decide whether accrual occurred at that time because, even if Chandler's response was not a final election, the limitations period still accrued before September 12, 2021.

¶**50**      After the Water District's repudiation, Chandler did not again seek performance until October 3, 2019. On that day, Chandler notified the Water District of Chandler's "intent to order water for delivery in 2020 pursuant to the terms of the [Agreement]" and asked for volume, cost, and delivery information. On October 9, 2019, the Water District reminded Chandler that it had terminated the Agreement. The Water District then failed to deliver water or comply with its other contractual obligations for all of 2020.

¶**51**      Once 2020 passed, so did the time for the Water District to perform. At that point, the Water District had not just anticipatorily repudiated the Agreement, the Water District was in material breach for non-performance. We know this because Chandler's complaint alleges that the Water District also materially breached the Agreement in 2023 by "refusing to determine the estimated amount of water available for delivery to Chandler," "refusing to develop a preliminary monthly water delivery schedule," and "refusing to supply Salt and Verde River water to Chandler," all of which the Water District had refused to do by the end of 2020.

¶**52**      In sum, while Chandler could have sued the Water District for a declaratory judgment or repudiation in May 2018, the statute of limitations began no later than when the Water District failed to perform its obligations under the Agreement. *See id.* At that moment, Chandler knew it had been damaged and it knew the cause, so Chandler could have sued. *See* A.R.S. § 12-821.01(B); *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995) ("As a general matter, a cause of action accrues, and the statute of limitations commences, when one party is able to sue another."). Because Chandler's claims accrued no later than January 1, 2021, its claims brought in September 2022 are time barred. *See* A.R.S. § 12-821.

**3.**

¶53        Chandler argues two opinions from our supreme court dictate a different result.  The first is *Henshaw v. Salt River Valley Canal Co.*, 9 Ariz. 418 (1906).  In that case, our supreme court held that a cause of action for failing to furnish an ongoing water supply was not barred although the otherwise applicable statute of limitations had run since the first violation.  *Henshaw*, 9 Ariz. at 421–22.  *Henshaw* is one of several Arizona opinions applying a common law "continuing tort" or "continuing wrong" exception to an otherwise expired limitations period.  *See Doe v. Roe*, 191 Ariz. 313, 325 ¶ 39 & n.12 (1998) (acknowledging *Henshaw* but "refus[ing] to address questions of the application of the statute of limitations on a separate tort or continuous tort theory"); *see also City of Tucson v. Apache Motors*, 74 Ariz. 98, 106 (1952) (statute of limitation for temporary or continuing nuisance accrues on date of successive injury); *Garcia v. Sumrall*, 58 Ariz. 526, 532–33 (1942) (continuing trespass by cattle).  None of those opinions, however, addressed accrual under § 12-821.

¶54        This court, however, *has* addressed whether the continuing wrong exception extends accrual under § 12-821 and has concluded the exception does not do so.  In *Watkins v. Arpaio*, this court explained that the limitations rules in §§ 12-821 and 12-821.01 "are creatures of statute, not the common law, and . . . do not allow [a plaintiff] to wait to bring suit until more than a year after acts sufficient to state a claim occur."  239 Ariz. 168, 173 ¶ 18 (App. 2016).  Here, the acts sufficient to state a claim for breach of contract against the Water District occurred no later than January 1, 2021, at which point the one-year limitations period in § 12-821 began to run.  The common law continuing wrong exception does not extend that limitations period beyond January 1, 2022, merely because Chandler could continue to breach the Agreement every year for the next sixty-five years.

¶55        The second opinion Chandler relies on is *Builders Supply Corp. v. Marshall*, 88 Ariz. 89 (1960).  There, the plaintiff agreed to haul the defendant's products at a specified rate.  *Id.* at 92.  The defendant paid the plaintiff a lesser amount than required.  *Id.*  Our supreme court held that each underpayment amounted to a separate breach, and therefore the plaintiff could recover any underpayments that occurred within the six-year period for breach of a written contract.  *Id.* at 95.

¶56        There are a few reasons why *Builders Supply* does not save Chandler's claims.  To start, *Builders Supply* predates (by 35 years) *Gust, Rosenfeld*—our supreme court's first opinion applying the discovery rule to certain contract actions.  *Builders Supply* does not discuss the discovery rule

for accrual of the six-year limitations period for a breach of contract action. *See id.* The court simply allowed damages for any underpayment occurring less than six years before the complaint was filed and disallowed damages for underpayments occurring more than six years prior. *See id.*; *see also Builders Supply Corp. v. Shipley*, 86 Ariz. 153, 157 (1959) (conducting the same analysis). It is not clear whether the result in *Builders Supply* would have been different had the claim there been brought after *Gust, Rosenfeld*. But what is clear is that *Builders Supply* does not address accrual under the discovery rule when a plaintiff *knows* the defendant has *both* anticipatorily repudiated a contract *and* openly committed a *material* breach through non-performance. *See Gust, Rosenfeld & Henderson*, 182 Ariz. at 589 (explaining that "the discovery rule does not apply" when "the plaintiff's injury is open and obvious").

¶**57**        Moreover, *Builders Supply* has been characterized as creating a "theory of 'continuous breach' in determining when a cause of action begins to accrue." *Ancala Holdings, L.L.C. v. Price*, 220 Fed. App'x. 569, 572 (9th Cir. 2007). Even accepting that characterization, for the reasons given in *Watkins*, we also decline to apply a common law "continuing breach" exception to save contract claims that would otherwise be barred under § 12-821 and its accrual standard. *See* 239 Ariz. at 173 ¶ 18 (explaining that the limitations period in § 12-821 cannot be extended using the continuing wrong exception "regardless of the tort"); *see also Gust, Rosenfeld & Henderson*, 182 Ariz. at 590 ("[T]he rationale behind the discovery rule relates more to the circumstances under which a legal duty is breached and less to the nature of the cause of action.").

¶**58**        Finally, taking Chandler's reliance on *Builders Supply* to its logical end shows why that reliance is problematic. The Agreement, unless terminated sooner, does not end until December 31, 2086. Under Chandler's view, it could wait ten, twenty, or sixty more years to demand performance, and any claim for refusing performance would be timely because each refusal—even if identical to the last—would be a new breach restarting the clock. Allowing a plaintiff to avoid the limitations period in this manner would be inconsistent with the statutory language and purpose of § 12-821. *See* A.R.S. § 12-821.01(B); *Humphrey v. State*, 249 Ariz. 57, 67 ¶ 34 (App. 2020) (rejecting an argument because adopting it "would run counter to the plain language and the purposes of §§ 12-821 and -821.01"). And doing so would be inconsistent with the general purpose of limitations periods, including for breach of contract. *See Flynn v. Campbell*, 243 Ariz. 76, 80–81 ¶ 10 (2017) (explaining limitations periods protect defendants "from stale claims and uncertainty about potential unresolved claims"); *Gust, Rosenfeld & Henderson*, 182 Ariz. at 590.

### III.

¶**59**      The Water District seeks attorney fees and costs on appeal under A.R.S. §§ 12-341 and 12-341.01. Because this action arises out of contract and the Water District is the prevailing party, we exercise our discretion to award the Water District attorney fees and costs on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

¶**60**      We vacate the superior court's judgment for Chandler (including the attorney fees award) and remand for entry of judgment for the Water District.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV